STATE of Wisconsin, Plaintiff-Respondent,

v.

Darron D. JACKSON, Defendant-Appellant.†

Court of Appeals

*No. 2010AP678–CR. Oral argument February 3, 2011.
—Decided April 27, 2011.*

**2011 WI App 63**

(Also reported in 799 N.W.2d 461.)

† Petition for Review denied 9/1/2011.

667

670

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Rebecca R. Lawnicki* of *Henak Law Office, S.C.* of Milwaukee. There was oral argument by *Amelia L. Bizzaro* of *Bizzaro Law LLC* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sally L. Wellman*, assistant attorney general, and *J.B. Van Hollen*, attorney general. There was oral argument by *Sally Wellman*.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. BROWN, C.J. Darron Jackson appeals his conviction for recklessly endangering safety while armed, contrary to Wis. Stat. §§ 941.30(1) & 939.63 (2009–10).[1] He was fifteen years old when he was charged with attempted first-degree intentional homicide, contrary to Wis. Stat. §§ 940.01(1)(a) & 939.32, for firing a gun at another person. After the close of evidence, the State moved to include recklessly endan-

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

gering safety while armed as a lesser included offense. Jackson's counsel objected on the basis that the evidence was insufficient for this lesser included. The trial court allowed it and he was convicted of the lesser offense. He now alleges several errors in that conviction, including that recklessly endangering safety while armed is not a lesser included offense of attempted first-degree intentional homicide. Even if that issue is waived for failing to object on this basis, he argues that his attorney was ineffective. We disagree—there was waiver and because trial counsel is not ineffective when the law is unsettled, as it is in this case, counsel was not ineffective here. Jackson also makes several other arguments, none of which persuade. We affirm.

¶ 2. On May 28, 2008, Jackson fired a gun at, and missed, Christopher Brown. Several people were present when the crime occurred, including Brown's stepfather, who identified Jackson as the shooter. Although Jackson was only fifteen when he was charged, the charges against him were serious enough to give the adult court original jurisdiction. *See* WIS. STAT. § 938.183(am). Jackson petitioned for reverse waiver into juvenile court. After his petition was denied, he was tried in adult court.

¶ 3. When the police interviewed Jackson, he initially denied he was at the scene of the shooting. Eventually, he admitted he was present, but he maintained his denial of being the shooter. Before trial, Jackson moved to suppress his statements to the police alleging that his statements were involuntary and without adequate waiver of his *Miranda*[2] rights. The motion was denied, and a video recording of the interrogation was played at trial.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

¶ 4. At trial, the victim's stepfather identified Jackson as the shooter. Other witnesses, including the victim and his mother, were unable to do the same. The victim's brother, who had previously picked Jackson out in a line-up, testified that he did not know who had shot at Brown. He also testified that when he picked Jackson out of the line-up, it was in response to the police asking him to point out a person called "Big Bub."

¶ 5. As we indicated at the outset, when both sides had rested, the State asked for a lesser included offense instruction for first-degree reckless endangerment of safety, with the penalty enhancer "while armed." Jackson's counsel objected that the facts adduced at the trial did not fit the lesser included instruction. The objection was overruled, and the instruction was given. The jury convicted Jackson of recklessly endangering safety while armed. Because Jackson was convicted of the lesser offense rather than the offense that was originally charged, he moved the court for reverse waiver for a second time after trial. His motion was denied, and he was sentenced in adult court. He subsequently filed a postconviction motion, which was denied in its entirety, and we have this appeal.

¶ 6. Jackson's brief raises three issues in addition to the one we deem to be the major issue. Those are: that his statements to police were wrongfully admitted at trial; that during closing arguments, the prosecutor made several inappropriate comments which he claims prejudiced him; and that, if we are to allow the recklessly endangering safety conviction to stand, then since that crime would not have been grounds for waiver into adult court had it been originally charged, the burden placed on him at his post-trial reverse waiver hearing was unconstitutional. We will address these arguments after the lesser included offense discussion.

673

## DISCUSSION

### Lesser Included Offense

¶ 7. Jackson argues that the lesser included offense instruction was "reversible error" because recklessly endangering safety while armed is not a lesser included offense of attempted first-degree intentional homicide. If we are to find waiver, he alternatively argues that his trial counsel was ineffective for failing to object properly to the instruction.

¶ 8. We hold that there was waiver here. The objection made, that the evidence was insufficient to support the lesser included instruction, is an altogether different one than a claim that the elements of the proposed "lesser" charge are different than the main charge and, therefore, cannot be called a "lesser included" crime. Had the proper objection been made, the prosecutor may have disregarded the "while armed" portion of the request for the lesser included in order to be safe. Or, the trial court may not have allowed the lesser included. We do not, of course, know for sure what would have happened. But we rarely reverse a trial court for something that it was never allowed to decide and we will not do so here. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980), *superseded by statute on other grounds.*

¶ 9. Because we find waiver, for Jackson's lesser included offense issue to have any traction, it must come under the guise of ineffective assistance of counsel. *See State v. Koller*, 2001 WI App 253, ¶ 44, 248 Wis. 2d 259, 635 N.W.2d 838. As such, Jackson must show that his trial counsel's performance was constitu-

tionally deficient, and that as a result, he suffered actual prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Whether counsel's performance was deficient and prejudicial is a question of law which we review de novo, though we will uphold the trial court's findings of fact unless they are clearly erroneous. *State v. Johnson*, 153 Wis. 2d 121, 127–28, 449 N.W.2d 845 (1990). Deficient performance is judged by an objective test, not a subjective one. *See State v. Kimbrough*, 2001 WI App 138, ¶ 31, 246 Wis. 2d 648, 630 N.W.2d 752. So, regardless of defense counsel's thought process, if counsel's conduct falls within what a reasonably competent defense attorney could have done, then it was not deficient performance. *See id.*

¶ 10. When the law is unsettled, the failure to raise an issue is objectively reasonable and therefore not deficient performance. *See State v. Maloney*, 2005 WI 74, ¶ 23, 281 Wis. 2d 595, 698 N.W.2d 583. When case law can be reasonably analyzed in two different ways, then the law is not settled. *State v. McMahon*, 186 Wis. 2d 68, 84, 519 N.W.2d 621 (Ct. App. 1994). Here, the State submits that the law as to the elements of recklessly endangering safety while armed was unsettled, and therefore Jackson's trial counsel's performance was not deficient. We agree, but for different reasons than asserted by the State—as we shall soon discuss.

¶ 11. Wisconsin uses an "elements-only" test to determine if a crime is a lesser included offense of another. *State v. Carrington*, 134 Wis. 2d 260, 264, 397 N.W.2d 484 (1986) (*Carrington II*). A lesser included offense may not include an additional element beyond those essential for conviction of the crime charged. *Id.*

at 265. Unquestionably, in order to convict a person of attempted first-degree intentional homicide, the State need not show that the person was armed. However, the "while armed" component of the charge is actually a penalty enhancer under WIS. STAT. § 939.63, not part of the statutory definition of recklessly endangering safety. The parties dispute whether the "while armed" penalty enhancer is *also* unequivocally an element of recklessly endangering safety while armed.

¶ 12. Recklessly endangering safety is a lesser included offense of attempted first-degree intentional homicide. *Hawthorne v. State*, 99 Wis. 2d 673, 681–82, 299 N.W.2d 866 (1981) (endangering safety by conduct regardless of life is a lesser included offense of attempted first-degree intentional homicide); *State v. Weeks*, 165 Wis. 2d 200, 205–06 & n.5, 477 N.W. 2d 642 (Ct. App. 1991) (the current offense of recklessly endangering safety is analogous to the older endangering safety by conduct regardless of life). However, the parties could point us to no case law definitively stating that the "while armed" penalty enhancer always constitutes an element for the purpose of determining whether something is a lesser included offense. In *State v. Carrington*, 130 Wis. 2d 212, 221–22, 386 N.W.2d 512 (Ct. App. 1986) (*Carrington I*), *rev'd on other grounds by Carrington II*, 134 Wis. 2d at 262, 268–69, we did hold that "while armed" was not only a penalty enhancer, it *was also* an element of the offense for purposes of the elements only test.

¶ 13. It is Jackson's contention that counsel was ineffective for failing to heed the pronouncement in *Carrington I* and object to the lesser included on the basis of that case. Jackson acknowledges that *Carrington I* was reversed by the supreme court in *Carrington II*.

*See Carrington II*, 134 Wis. 2d at 262. But he points out that the reversal was on other grounds. *See id.* at 267–69. Moreover, he argues that the supreme court accepted the premise that "while armed" is an element of recklessly endangering safety while armed.

¶ 14. The State points out that, in *Carrington II*, while the supreme court did analyze the case based on "while armed" being an element, it explicitly noted that the State had conceded that point. *Id.* at 267 n.5. The State therefore contends that *Carrington II* is not authority which bolsters Jackson's position. It posits that a concession for the sake of argument, which is adopted by the supreme court and is not thereafter the subject of studied discussion, cannot be considered as a holding worthy of precedential value. We agree with the State and will not consider *Carrington II* as authority for the proposition that "while armed" is an element. But that begs the question of whether *Carrington I* compelled Jackson's trial attorney to object to the lesser included.

¶ 15. To this question, the State offers a couple of different arguments, but we are convinced that they are without merit. We find it unnecessary to discuss these arguments at length and relegate them to a footnote.[3]

[3] The State asserts that *Carrington II*s reversal of *Carrington I* could lead a reasonable attorney to conclude that *Carrington I* was no longer good law. *See State v. Carrington,* 130 Wis. 2d 212, 221–22, 386 N.W.2d 512 (Ct. App. 1986) (*Carrington I*), *rev'd on other grounds by Carrington II,* 134 Wis. 2d at 262, 268–69. For this proposition, the State cites *Blum v. 1st Auto Cas. Ins. Co.,* 2010 WI 78, 3, 42, 326 Wis. 2d 729, 786 N.W.2d 78 (a court of appeals decision overruled by the supreme court no longer has any precedential value unless the supreme court expressly states otherwise).

But, we may affirm for reasons other than those raised by the State. *See State v. Holt*, 128 Wis. 2d 110, 124–25, 382 N.W.2d 679 (Ct. App. 1985), *superseded by statute on other grounds.*

¶ 16. The simple reality is that the holding in *Carrington I* was based on an altogether different factual situation than the one in this case. The posture of the case in *Carrington I* was summarized by the court thusly:

> In the instant case, the record shows that the criminal complaint identified the charge against Carrington as "endangering safety by conduct regardless of life while armed," that the trial court described the charge to the jurors in those terms, and that the jury was instructed to determine whether Carrington committed the crime of endangering safety by conduct regardless of human life while using a dangerous weapon. Clearly, the element of "using a dangerous weapon" *became* an element of the charge against Carrington.

*Carrington I*, 130 Wis. 2d at 221–22 (emphasis added). It is evident to us that the case was prosecuted so as to

---

We disagree with the State. Its position is diluted by a holding of the supreme court subsequent to *Blum*. *State v. Harris*, 2010 WI 79, 326 Wis. 2d 685, ¶ 34 n.12, 786 N.W.2d 409, expressly limited the breadth of *Blum*. The supreme court wrote that "[o]nly when a case is overruled does [the court of appeals opinion] lose all of its precedential value." *Harris*, 326 Wis. 2d 685, ¶ 34 n.12. *Carrington II* reversed *Carrington I*. It did not overrule it. Furthermore, *Blum* was decided after the trial in this case. We have long held that a reversal of a court of appeals opinion, on other grounds, does not affect the validity of the remaining holding or holdings of that lower court opinion unless the supreme court expressly says so. *See, e.g., Blum*, 326 Wis. 2d 729, ¶¶ 44–45. We assume that a reasonable attorney would pay heed to that long held practice.

include "while armed" as an element, and, importantly, the jury was asked to consider the "while armed" portion as an element. Therefore, by virtue of the state of the record, the "while armed portion" *became* an element.

¶ 17. The posture of the case is different here. Since recklessly endangering safety while armed was not added to the instructions until after testimony, the "while armed" component was certainly not included as part of the offense in the complaint. And, our review of the jury instructions and verdict form reveals that the "while armed" penalty enhancer had its own instruction, separate from the elements listed in the recklessly endangering safety instruction.

¶ 18. The recklessly endangering safety instruction stated that the offense has "three elements":

1. The defendant endangered the safety of another human being.

2. The defendant endangered the safety of another by criminally reckless conduct.

 . . . .

3. The circumstances of the defendant's conduct show utter disregard for human life.[4]

Then, on the jury verdict form, the jury was asked two separate questions regarding the lesser included offense: whether it found Jackson guilty of recklessly endangering safety and whether Jackson was armed while committing recklessly endangering safety. It answered "yes" to both. Under this record, it would be

---

[4] At oral argument, we asked both parties to discuss this format and questioned how the trial court's handling of the "while armed" enhancer might impact the analysis of this issue.

reasonable for an attorney to believe that the jury was not being asked to consider the "while armed" enhancer as an element for the purpose of deciding whether the Jackson should be found guilty of the recklessly endangering safety charge as a lesser included offense. We therefore are convinced that counsel was not ineffective for failing to raise *Carrington I*.[5]

¶ 19. We acknowledge that a reasonable attorney *could have* objected to the lesser included instruction given here, based on *Carrington I*. But, since the case can be reasonably limited to its specific fact situation, the trial attorney's failure to object was not deficient performance. *See McMahon*, 186 Wis. 2d at 84. Because of that, Jackson's ineffective assistance of counsel claim on this issue fails. We now address the three remaining issues.

## Statements to Police

¶ 20. We have a two-step standard of review for constitutional questions. First, we uphold the trial court's findings of evidentiary or historical fact unless they are clearly erroneous. *See State v. Clappes*, 136 Wis. 2d 222, 235, 401 N.W.2d 759 (1987). Then, we review de novo how those facts apply to a constitutional standard. *Id.* In police statement cases, the threshold question is whether the defendant's statement was

---

[5] Jackson also cites to *State v. Villarreal*, 153 Wis. 2d 323, 450 N.W.2d 519 (Ct. App. 1989) for the proposition that the "while armed" penalty enhancer is an element of recklessly endangering safety while armed. However, *Villarreal*, citing *Carrington I*, relied on a similar factual situation to the one in *Carrington I*, so we reject that argument on the same basis. *See Villarreal*, 153 Wis. 2d at 329 n.1.

coerced or the product of improper police pressure. *State v. Hoppe*, 2003 WI 43, ¶ 37, 261 Wis. 2d 294, 661 N.W.2d 407. To determine voluntariness, we examine the totality of the circumstances surrounding the confession to balance the personal characteristics of the defendant against any coercive or improper conduct. *State v. Jerrell C.J.*, 2005 WI 105, ¶ 20, 283 Wis. 2d 145, 699 N.W.2d 110.

¶ 21. Jackson asserts that his interrogation was coercive. Specifically, he contends that during the 1.5 hour interrogation, police lied to him (by claiming that multiple witnesses had identified in a photo lineup) and made "backhanded racial threats" (by stating "I'm not here to hang you from a noose and say hey your life's over"). Jackson claims that these actions, in combination with his IQ of 73 and age, resulted in an involuntary confession.

¶ 22. The State responds that, while it may not have been true that multiple people had identified Jackson in a lineup, one person had. And misrepresentation or trickery does not make an otherwise voluntary statement involuntary—it is only one factor to consider in the totality of the circumstances. *State v. Ward*, 2009 WI 60, ¶ 27, 318 Wis. 2d 301, 767 N.W.2d 236. As we explained in *State v. Triggs*, 2003 WI App 91, ¶ 19, 264 Wis. 2d 861, 663 N.W.2d 396,

> Inflating evidence of [the defendant's] guilt interfered little, if at all, with his "free and deliberate choice" of whether to confess, for it did not lead him to consider anything beyond his own beliefs regarding his actual guilt or innocence, his moral sense of right and wrong, and his judgment regarding the likelihood that the police had garnered enough valid evidence linking him to the crime.

*Id.* (quoting *Holland v. McGinnis*, 963 F.2d 1044, 1051 (7th Cir. 1992)). The same is true here—the officer exaggerated the evidence of Jackson's guilt. This does not make Jackson's statement involuntary.

¶ 23. As far as the officer's statement to Jackson that he was not there to hang him "from a noose" is concerned, the officer testified that his intention was to minimize the offense, and that the possible racial undertones never occurred to him. The trial court, having reviewed the videotape of the interrogation, placed particular emphasis on the officer's physical demeanor while that statement was being made, as well as throughout the interview. The trial court did not view the officer's demeanor as intimidating or coercive. After our review of the video, we concur.

¶ 24. Correlatively, Jackson points out that police conduct need not be egregious to be coercive—"subtle pressures are considered to be coercive if they exceed the defendant's ability to resist." *See Jerrell C.J.*, 283 Wis. 2d 145, ¶ 19 (citation omitted). Pressures that are not coercive in one set of circumstances may be coercive in another set of circumstances "if the defendant's condition renders him or her uncommonly susceptible to police pressures." *Id.* Jackson submits that he is like the defendant in *Jerrell C.J.*, where our supreme court decided that a juvenile's confession was involuntary under the totality of the circumstances. *See id.*, ¶ 36. Jerrell, like Jackson, was a juvenile with an IQ below average, a history of poor performance in school, and two prior contacts with police. *See Jerrell C.J.*, 283 Wis. 2d 145, ¶¶ 27–29.

¶ 25. The test, however, requires balancing the personal characteristics of the defendant against any

682

coercive or improper conduct. *See id.*, ¶ 20. And while there are some similarities between Jerrell and Jackson's personal characteristics, the police conduct was very different. As the State points out, Jerrell was left alone for two hours, handcuffed to a wall. *Id.*, ¶ 33. Then, he was interrogated for five and a half hours. *Id.* Numerous requests to call his parents were denied. *Id.*, ¶ 10. Jackson, on the other hand, was brought in by his father. Although he was alone with an officer in the interrogation room, he was not handcuffed and the interrogation lasted only one and a half hours. He never did confess to a crime. We agree with the State and the trial court that the totality of the circumstances in this case do not support that Jackson's statement was involuntary.

### *State's Closing Arguments*

¶ 26. Jackson complains that "[t]he prosecutor made impermissible comments about witness credibility, attempted to shift the burden of proof to Jackson, and essentially told the jury Jackson was in a gang, although neither party proffered evidence that he was." Jackson highlights three specific statements made by the prosecutor during closing arguments. First, he claims that the prosecutor accused witnesses of lying on the stand. Second, he states that the prosecutor shifted the burden of proof by stating more than once that the defendant had no obligation to put on a defense, but once he chose to do so, the jury could hold him to a certain standard. Finally, he contends that the prosecutor improperly implied that Jackson was in a gang even though there was no evidence to that effect at trial.

¶ 27. In anticipation of the State's arguing that Jackson waived these arguments by failing to object to

the statements at the trial level, Jackson claims that the prosecutor's statements were plain error. Alternatively, he alleges that his trial counsel was ineffective for failing to object to them. For us to find plain error, the error must be "obvious and substantial." *State v. Sonnenberg*, 117 Wis. 2d 159, 177, 344 N.W.2d 95 (1984). Regarding the ineffective assistance claim, as we said in our earlier discussion on ineffective assistance of counsel, there must be deficient performance, which means counsel must have performed below an objective standard of reasonableness. *See Koller*, 248 Wis. 2d 259, ¶¶ 53–56.

¶ 28. Our supreme court has explained that prosecutors have significant latitude with their closing arguments:

> [C]ounsel in closing argument should be allowed "considerable latitude," with discretion to be given to the trial court in determining the propriety of the argument. The prosecutor may "comment on the evidence, detail the evidence, argue from it to a conclusion and state that the evidence convinces him and should convince the jurors."
>
> . . . .
>
> The line between permissible and impermissible argument is thus drawn where the prosecutor goes beyond reasoning from the evidence to a conclusion of guilt and instead suggests that the jury arrive at a verdict by considering factors other than the evidence.

*State v. Draize*, 88 Wis. 2d 445, 454, 276 N.W.2d 784 (1979) (citations omitted). The court went on to state that "we will not throttle the advocate by unreasonable restrictions so long as the comments relate to the evidence." *Id.* at 456.

¶ 29. Jackson's first two arguments involve comments made by the prosecutor about conclusions the jury should draw from evidence, which means the prosecutor should be afforded "considerable latitude." *See id.* at 454 (citation omitted). And since Jackson did not object to the comments at trial, we will not reverse unless the comments were so obviously improper that the failure to object was plain error or deficient performance by counsel. *See Sonnenberg*, 117 Wis. 2d at 177; *Koller*, 248 Wis. 2d 259, ¶¶ 53–56. Accusing a witness of lying, based on the evidence, is not even close to being beyond the pale.[6] Nor is the comment that, once a defendant chooses to put witnesses on the stand, those witnesses are subject to "some type of standard." Although Jackson argues that this comment somehow shifts the burden of proof, we view it as a permissible reminder that the jury can evaluate the credibility of defense witnesses by the same standard as witnesses for the State.

¶ 30. Jackson's final argument involves the following statement made by the State:

> The intelligence of the City of Racine Police Department that deals with a lot of gang members, and everyone has got a street name, is that there's nobody else in the City of Racine that they're aware of with the street name Big Bub.

---

[6] Jackson also argues that the prosecutor went outside of the evidence by encouraging the jury to punish the defendant for the witnesses' alleged insincerity. After reviewing the transcript of the closing argument, we disagree with that interpretation and note that the prosecutor actually reminded the jury at least once that its duty was to apply evidence to the law.

The comment was based on trial testimony from an officer stating that he was not aware of any other people with the street name "Big Bub."

¶ 31. The State argues that the statement was not plain error because the comment was based on evidence and the prosecutor did not say that Jackson was a gang member. It also points out that Jackson's trial counsel testified that the decision not to object was strategic because he did not want to call the jury's attention to the gang reference. Therefore, it argues, there was no deficient performance. *See State v. Cooks*, 2006 WI App 262, ¶ 44, 297 Wis. 2d 633, 726 N.W.2d 322 (explaining that trial counsel's decision to forgo an objection to avoid unwanted jury attention was not deficient performance). We agree on both points.

¶ 32. Neither the victim nor the victim's brother would identify Jackson from the stand. But the victim did say on the witness stand that if Jackson was "Big Bub," "that's the shooter." And a police officer testified that the victim told the officer that he did not want to press charges, he only wanted to fight "him." The victim identified "him" as "Big Bub." Another officer told the jury that "Big Bub" was Jackson's "street name." He also testified that there was no one else the police were aware of with the same "street name." The mother, who was present near the shooting, also identified the shooter as "Big Bub." Finally, even though the brother refused to identify Jackson from the witness stand, he told police after the altercation that the shooter was "Big Bub" and identified Jackson as "Big Bub." So, taking the prosecutor's comment in context, all the prosecutor was saying is that police encounter "street names" all the time, that street names are plentiful because police deal with gangs, and even though there are a plethora of street names, "Big Bub" stands out as

a unique name. Therefore, the prosecutor was not connecting or insinuating that Jackson was a gang member, but only that the name "Big Bub" was unique—so the jury could find that "Big Bub" was Jackson. We see no error here.

## Post-trial Reverse Waiver

¶ 33. Jackson argues that he was denied due process and equal protection when *he* was required to prove, by clear and convincing evidence, that reverse waiver was appropriate. This argument is based on the fact that adult courts have original jurisdiction over juveniles who are charged with attempted first-degree intentional homicide on or after their 10th birthday, Wis. Stat. § 938.183(am), but juvenile courts have original jurisdiction over juveniles who are charged with recklessly endangering safety while armed, Wis. Stat. § 938.12(1). So, if Jackson had been charged initially with recklessly endangering safety while armed, the case would have started in juvenile court and the State would have had to prove by clear and convincing evidence that waiver into adult court was appropriate. *See* Wis. Stat. § 938.18(1)(c) & (6).

¶ 34. According to Jackson, it follows that if the State would have had the burden had he been initially charged with endangering safety while armed, it should have the burden now. Jackson asserts that he is the victim of disparate treatment, simply because the State chose to charge the endangering safety while armed crime later than earlier. He argues that, by the State's action, it has avoided having the burden and has instead transferred it to Jackson. He contends that this is a violation of equal protection and due process.

687

¶ 35. We disagree. The distinction is that, in cases that originate in juvenile court, at the time of the State's petition for waiver, the prosecutor's charging discretion is checked only by the requirement that there be a finding of prosecutive merit, which is equivalent to a finding of probable cause at a preliminary hearing. *See* WIS. STAT. § 938.18(4)-(5); *T.R.B. v. State*, 109 Wis. 2d 179, 190, 325 N.W.2d 329 (1982). For cases like this one—where a juvenile is tried in adult court based on an original adult jurisdiction charge and then convicted of a lesser included offense that would have originated in juvenile court—the trial court has significantly more information at a postconviction reverse waiver hearing. Specifically, it has all of the trial testimony regarding the crime of conviction and the crime charged; the prosecutor has shown the basis for its initial charging decision. So, it makes sense that the burden is on the defendant to show that, despite live testimony, despite a conviction, the juvenile should be remanded to the juvenile court for a remedy.

¶ 36. In other words, Jackson stands in different shoes than the juvenile who, at the beginning stages of the process, has only probable cause showing against him or her. Jackson has now been convicted. In the jury's eyes, he did the crime, beyond a reasonable doubt. There is no valid due process or equal protection argument to be made.

*Interests of Justice*

¶ 37. Jackson's final argument is that we should reverse his conviction in the interests of justice. He claims that the real controversy was not tried because

688

of "the admission of highly prejudicial evidence." Our discretionary reversal power under WIS. STAT. § 752.35 is formidable and should be exercised sparingly and with great caution. *State v. Williams*, 2006 WI App 212, ¶ 36, 296 Wis. 2d 834, 723 N.W.2d 719. We are reluctant to grant new trials in the interests of justice and exercise our discretion to do so "only in exceptional cases." *See State v. Armstrong*, 2005 WI 119, ¶ 114, 283 Wis. 2d 639, 700 N.W.2d 98. We decline to do so in this case.

*By the Court.*—Judgment and order affirmed.