COURT OF APPEALS
DECISION
DATED AND FILED

September 1, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP707-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2015CF16**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

CHRISTOPHER C. BURNS,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Marathon County:  GREGORY E. GRAU and GREGORY J. STRASSER, Judges. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Christopher Burns appeals a judgment, entered following a jury trial, convicting him of two counts of first-degree sexual assault of a child and one count of child enticement, all three counts as a repeater. Burns also appeals an order denying his motion for postconviction relief.[1] Burns argues he is entitled to a new trial because his trial attorney was ineffective by failing to seek admission of DNA evidence found on a pair of the victim's underwear. Burns also argues the trial court erroneously exercised its discretion by denying his request to review an unredacted copy of the victim's SANE report.[2] Finally, Burns argues he is entitled to a new trial in the interest of justice. We reject these arguments and affirm.

## BACKGROUND

¶2      The charges against Burns arose from allegations that he sexually assaulted six-year-old Beth[3] on October 24, 2014. According to a police report attached to the criminal complaint, on October 26, Beth told her mother, Janet, that "the black guy made me suck on his thing that he pees out of." Beth told Janet that her assailant was "the other black guy that was not here."

¶3      Janet reported the assault to police and told them she believed Beth was referring to Burns, who was dating Beth's grandmother. Janet explained that Burns did not live with Janet, Beth, and Beth's grandmother, but he had been

---

[1]  The Honorable Gregory E. Grau presided over Burns' trial and entered his judgment of conviction. The Honorable Gregory J. Strasser entered the order denying Burns' postconviction motion. For the remainder of this opinion, we refer to Judge Grau as "the trial court" and to Judge Strasser as "the postconviction court."

[2]  SANE is an acronym for the term "sexual assault nurse examiner."

[3]  Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2017-18), we refer to the victim using a pseudonym. We also use a pseudonym when referring to the victim's mother. All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

"staying with them almost every night." Janet told police that another black male named Brad also stayed with them, but Brad was home at the time Beth told Janet about the assault, so Janet did not think Beth was referring to Brad.

¶4 Beth subsequently spoke to a police officer, who provided the following synopsis of their conversation in his report:

> [Beth] told me she was sleeping when "he" woke her up to "suck this part" ([Beth] pointed to her pelvic area). She told me this happened for "a long time at night." [Beth] told me "he" also made her do it in the kitchen when everyone was sleeping; he made her do it for "half an hour." [Beth] told me the part in the bathroom lasted for approximately 15 minutes but later said half an hour. .... When asked if anything else happened, [Beth] told me "he did sex with me on the toilet." I asked her what she meant by that and she told me "actual sex." She told me this happened "two days off from this day back."

Beth initially told the police officer she did not know the name of the man who assaulted her, but she later stated his name was "Chris."

¶5 Beth also identified her assailant as "Chris" during a forensic interview at the Child Advocacy Center of North Central Wisconsin. During that interview, Beth again reported that Chris had forced her to suck his "wiener" in the bathroom, and she also stated he put his "wiener" in her "hoo hoo," meaning her vaginal area.

¶6 Beth underwent a SANE examination on October 30, 2014. Before trial, Burns received discovery that included a copy of the SANE report. However, certain portions of the SANE report were redacted. As relevant to this appeal, on the line of the form asking whether Beth had a history of "prior sexual abuse," a black marker had been used to conceal Beth's response. After Burns reviewed the redacted SANE report, the parties stipulated that the trial court would conduct an in

3

camera review of the unredacted report and determine whether the redacted information should be released to the defense. On June 4, 2015, the court wrote to the parties stating it had conducted its in camera review of the SANE report and "did not find anything in [the] redacted packet that should be disclosed to the defense at this time."

¶7      Burns' trial was scheduled to take place during the week of July 7, 2015. Shortly before trial, the defense received additional discovery indicating that law enforcement had recovered a pair of Beth's underwear on November 5, 2014—twelve days after the alleged sexual assaults. The State informed the trial court that Janet had discovered the underwear in an "odd location" in her home—specifically, inside a toy box. During a hearing on June 12, 2015, the State indicated it had sent the underwear for DNA testing.

¶8      On June 25, 2015, Burns' trial attorney moved to adjourn the scheduled jury trial pending the results of the DNA testing of Beth's underwear. Counsel's motion asserted: "The DNA report may help Mr. Burns, it may hurt him, or it may be neutral. However, I cannot properly advise Mr. Burns and cannot adequately prepare for trial unless I know the conclusions in the Crime Laboratory report." At a subsequent motion hearing, defense counsel argued the DNA evidence "could be extremely important" because it could "point to another perpetrator." The trial court granted counsel's motion to adjourn Burns' trial.

¶9      The DNA test results ultimately showed that a mixture of "touch DNA" from at least three males was present on the crotch and waistband of the underwear. Burns was excluded as a contributor to that DNA mixture. During a final pretrial hearing on September 25, 2015, the State informed the trial court that it did not intend to pursue further DNA testing to identify the sources of the male

4

DNA found on the underwear. Burns' trial attorney then stated he would inform the court during a scheduled status conference on October 6, 2015, whether he intended to seek admission of the DNA evidence at Burns' trial.

¶10 During the October 6 status conference, defense counsel indicated that he was still debating whether to introduce the DNA test results from Beth's underwear into evidence at trial. The State took the position that if the defense wanted to introduce that evidence, "there would have to be a motion filed to determine the admissibility of the results of that testing." Defense counsel then agreed that if he decided he wanted to use the DNA evidence at trial, he would file a pretrial motion regarding the evidence's admissibility. No such motion was filed, and the case proceeded to trial.

¶11 At trial, Beth testified that on the night of the assaults, Burns woke her up and made her "suck his wiener" in the bathroom of the apartment where she lived with her mother, her grandmother, and Burns. When asked whether she remembered if Burns' "wiener" touched any other part of her body, Beth responded, "No." However, the jury also viewed the recording of Beth's forensic interview, during which Beth stated Burns had put his "wiener" in her "hoo hoo." Although Beth had initially told police that one of the assaults occurred in the kitchen of her home, during her trial testimony and the forensic interview, she described only assaults that took place in the bathroom.

¶12 The State also called detective Jon Kindlarski to testify at Burns' trial. As relevant to this appeal, the State asked Kindlarski how he decided what evidence to collect from Beth's apartment. In response, Kindlarski explained that he decided not to collect any clothing from the apartment because Burns was an invited guest

who had permission to be in all areas of the apartment, and it was therefore "very feasible" that Burns' DNA would have "naturally attached to [Beth's] clothing."

¶13    Thereafter, on cross-examination, defense counsel asked Kindlarski whether he went to Beth's apartment to retrieve "some underwear" on November 5, 2014. The State objected, and outside the presence of the jury, the prosecutor explained that she had "very big concerns about what we previously discussed last week, which was if there was going to be introduction of anything concerning this pair of underwear, there was supposed to be a motion, so on and so forth, and that was never filed." In response, Burns' attorney argued that regardless of his failure to file a motion regarding the DNA evidence from the underwear, the State had opened the door to the introduction of that evidence when Kindlarski "testified that he didn't search for any kind of DNA."

¶14    The trial court disagreed, concluding Kindlarski's testimony "did not open the door to allow testimony to come in concerning the underwear." The court further concluded that defense counsel was required, but failed, to file a pretrial motion regarding the admissibility of that evidence. The court therefore "preclude[d] further inquiry into the pair of underwear that is at issue or any testing or lack of testing surrounding it." The court subsequently clarified that defense counsel could "make the point that there was no evidence procured that showed Mr. Burns' DNA," but he could not "get into the specific testimony concerning the underwear."

¶15    The jury ultimately found Burns guilty of all three charged offenses. Burns then filed a postconviction motion seeking a new trial. Burns argued his trial attorney was ineffective by: (1) failing to introduce evidence that Burns was excluded as a contributor of the touch DNA identified on Beth's underwear; and

(2) failing to secure the admission of evidence that Beth had been the victim of a prior sexual assault. Burns also sought a new trial in the interest of justice.

¶16 The circuit court held a ***Machner***[4] hearing, during which Burns' trial attorney explained that his strategy at trial was twofold. First, he argued at trial that there was no physical evidence indicating that Burns had sexually assaulted Beth. Second, he argued it was implausible that no one heard or saw the assaults Beth described, given the number of people in the small apartment at the time the assaults allegedly took place. In other words, counsel argued that because of the surrounding circumstances, it was "highly unlikely" that *any* sexual assault occurred on the night in question.

¶17 When asked why he did not file a pretrial motion to admit the DNA evidence found on Beth's underwear, trial counsel responded that he did not believe that evidence "helped or hurt" Burns' defense. He explained that he believed the evidence "wouldn't make any difference," due to the time lapse between the alleged assaults and the date the underwear were found, the potential for contamination, and the fact that no semen was found on the underwear. Counsel noted "there was absolutely no one who linked this particular pair of underwear to the sexual assault[s] in question," and there was no evidence the victim was wearing the underwear on the day of the assaults.

¶18 Counsel also explained that, even without DNA evidence from the underwear, he was able to argue that the State had no physical evidence showing that Burns had sexually assaulted Beth. In addition, counsel agreed with the State that the DNA evidence's only relevance would have been to suggest that someone

---

[4] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

other than Burns had sexually assaulted Beth. Counsel acknowledged that any such suggestion would have been inconsistent with his trial strategy of arguing that no assault occurred on the night in question.

¶19 Burns' trial attorney further testified that he did not consider filing a motion to admit evidence that Beth had been the victim of a prior sexual assault because he could not confirm that any prior assault had occurred due to the trial court's decision not to provide the defense with an unredacted copy of the SANE report. When asked why he decided not to file a motion for reconsideration of that decision, counsel testified he would not have filed such a motion "if [he] thought it wasn't going to go anywhere." Counsel then explained that because he had "nothing concrete to put in a motion" for reconsideration, "[t]he result would have been the same."

¶20 The postconviction court denied Burns' motion for a new trial. The court concluded Burns' trial attorney did not perform deficiently by failing to seek admission of the DNA evidence from Beth's underwear. The court reasoned that trial counsel made a reasonable strategic decision to emphasize the lack of physical evidence implicating Burns and to argue that no sexual assault could have occurred in the small apartment without other individuals noticing. In contrast, the court stated that by attempting to admit the DNA evidence, trial counsel would have been "chas[ing] … a red herring" because the underwear could have been in the toy box "for any period of time," and there was "no real theory as to how [the underwear] relate[d] to the sexual assault[s]." As such, the court concluded it was reasonable for counsel to "save [his] powder in this case for [the] strongest part, which is there is no physical evidence linking [Burns] to it, and it's too small of a place for it to happen."

¶21   The postconviction court also concluded Burns' trial attorney did not perform deficiently with respect to the SANE report.  The court found that trial counsel appropriately addressed the redacted information in the SANE report by stipulating to an in camera review of the unredacted report.  The court further found that after the trial court determined the unredacted report would not be released to the defense, there was no basis for trial counsel to file a motion for reconsideration of that decision.

¶22   Finally, the postconviction court concluded that Burns was not entitled to a new trial in the interest of justice.  The court therefore entered a written order denying Burns' postconviction motion.  Burns now appeals.

**DISCUSSION**

**I.  DNA evidence from Beth's underwear**

¶23   On appeal, Burns first argues that his trial attorney was ineffective by failing to "secure admission" of the DNA evidence from Beth's underwear by filing a pretrial motion to admit that evidence.[5]  Whether an attorney rendered ineffective assistance is a mixed question of fact and law.  *State v. Nielsen*, 2001 WI App 192, ¶14, 247 Wis. 2d 466, 634 N.W.2d 325.  We will uphold the postconviction court's findings of fact unless they are clearly erroneous.  *Id.*  However, whether the defendant's proof is sufficient to establish ineffective assistance is a question of law that we review independently.  *Id.*

---

[5]  As noted above, at trial, Burns' attorney attempted to introduce the DNA evidence during his cross-examination of detective Kindlarski, arguing Kindlarski's testimony on direct examination had opened the door to the admission of that evidence.  The trial court sustained the State's objection, ruling that Kindlarski's testimony did not open the door to the admission of the DNA evidence.  Burns does not challenge that ruling on appeal, and we therefore do not address it further.

¶24    To prevail on an ineffective assistance claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. ***Strickland v. Washington***, 466 U.S. 668, 687 (1984).  If a defendant fails to make a sufficient showing on one prong of the ***Strickland*** test, we need not address the other.  ***Id.*** at 697.  In this case, we conclude Burns' ineffective assistance claim fails because he has not shown that his trial attorney performed deficiently with respect to the DNA evidence from Beth's underwear.  Accordingly, we need not address whether counsel's failure to secure the admission of that evidence prejudiced Burns' defense.

¶25    To prove deficient performance, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." ***Id.*** at 687-88.  When assessing counsel's performance, we "indulge a strong presumption" that counsel's conduct fell within the wide range of reasonable professional assistance.  ***Id.*** at 689.  As such, we "will not second-guess a reasonable trial strategy." ***State v. Domke***, 2011 WI 95, ¶49, 337 Wis. 2d 268, 805 N.W.2d 364. "In fact, where a lower court determines that counsel had a reasonable trial strategy, the strategy 'is virtually unassailable in an ineffective assistance of counsel analysis.'" ***State v. Breitzman***, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93 (citation omitted).

¶26    Here, we agree with the postconviction court that Burns' trial counsel made a reasonable strategic decision not to seek admission of the DNA evidence from Beth's underwear because he reasonably concluded that evidence would not help Burns' defense.  Burns theorizes that the presence of three other males' DNA on the underwear was relevant to show that someone other than Burns committed the alleged assaults.  Burns also argues that the absence of his DNA on the

underwear was relevant because "[i]f Burns sexually assaulted [Beth], one would tend to expect that his DNA would be found on the underwear."

¶27     These arguments fail because, as the postconviction court correctly noted, there was nothing tying the underwear to the October 24, 2014 assaults.  The underwear were found twelve days after the assaults were alleged to have occurred. They were not found in the room where the assaults took place, and there was no evidence indicating that the victim was wearing the underwear on the date of the assaults.  There was also no evidence as to how long the underwear had been in the toy box before they were found.  Although the underwear were found in an unusual location, there was nothing to indicate who placed them in the toy box or why.

¶28     Given the complete lack of evidence tying the underwear to the charged assaults, it was reasonable for Burns' trial attorney to conclude that the DNA evidence from the underwear would not help Burns' defense.  In addition, counsel testified during the *Machner* hearing that when deciding whether to seek admission of the DNA evidence, he also considered the potential for contamination and the absence of semen on the underwear.  Counsel could reasonably conclude that both of those factors further limited the extent to which the DNA evidence would persuade the jury that Burns did not sexually assault Beth.

¶29     Moreover, Burns' trial attorney testified at the *Machner* hearing that his strategy at trial was to argue that:  (1) there was no physical evidence indicating that Burns sexually assaulted Beth; and (2) it was highly unlikely that *any* sexual assault took place, given the size of the apartment and the presence of other individuals on the night in question.  The postconviction court found that counsel's trial strategy was reasonable.  On appeal, Burns does not argue that his counsel's

strategy was unreasonable.  Instead, he asserts counsel should have done something *more* by attempting to admit the DNA evidence.

¶30 We disagree.  As trial counsel observed during the *Machner* hearing, even without the DNA evidence, counsel was able to argue at trial that there was no physical evidence implicating Burns.  Trial counsel also testified during the *Machner* hearing that using the DNA evidence to argue that someone else had sexually assaulted Beth would have been inconsistent with his strategy of arguing that no assault took place on the night in question.  Under these circumstances, we agree with the postconviction court that counsel's decision not to seek admission of the DNA evidence was a reasonable strategic choice, which we will not second-guess on appeal.  *See Domke*, 337 Wis. 2d 268, ¶49.  As the postconviction court correctly noted, counsel could reasonably conclude that seeking to introduce the DNA evidence would be tantamount to "chas[ing] … a red herring," and it was therefore reasonable for counsel to "save [his] powder" for his stronger arguments.

¶31 Burns argues his trial attorney conceded the importance of the DNA evidence before trial when he moved to adjourn the scheduled trial date until the parties had received the DNA test results.  Burns observes that in support of that motion, counsel argued the DNA evidence "could be extremely important" because it could "point to another perpetrator."  Regardless of what counsel thought before receiving the DNA test results, however, he later reasonably concluded that the DNA evidence would not help Burns' defense, for the reasons explained above.  The fact that counsel believed it was important to receive and assess the DNA evidence before proceeding to trial does not convince us that counsel performed deficiently by ultimately deciding not to seek the admission of that evidence.

¶32     Burns also notes that during the *Machner* hearing, his trial attorney stated he believed Burns was the only adult male in Beth's apartment at the time of the assaults.  Burns argues counsel was mistaken because "there was at least one other adult male"—Brad—"who resided in [Beth's] apartment."  Burns therefore asserts that counsel should have introduced the DNA evidence to show that someone other than Burns—presumably Brad—could have assaulted the victim.

¶33     Trial counsel's belief that Burns was the only adult male in the apartment at the time of the assaults does not convince us that counsel performed deficiently by failing to seek admission of the DNA evidence.  Whether an attorney performed deficiently "is judged by an objective test, not a subjective one."  *State v. Jackson*, 2011 WI App 63, ¶9, 333 Wis. 2d 665, 799 N.W.2d 461.  Accordingly, "regardless of defense counsel's thought process, if counsel's conduct falls within what a reasonably competent defense attorney could have done, then it was not deficient performance."  *Id.*  As noted above, there was absolutely no evidence in this case connecting the underwear to the alleged assaults.  Thus, even if another adult male was present in the apartment at the time of the assaults, a reasonably competent defense attorney could have concluded that arguing the DNA evidence showed that man (or some other adult male) had assaulted Beth would have been less persuasive than counsel's chosen trial strategies—namely, emphasizing the complete lack of physical evidence implicating Burns and arguing that, given the size of the apartment and the number of individuals present on the night in question, it was highly unlikely that *any* assaults took place.

¶34     Finally, Burns argues the DNA evidence would have been relevant to show that law enforcement did a poor job of investigating Beth's allegations.  His conclusory argument in that regard is undeveloped, but presumably he means to argue that Janet's discovery of the underwear twelve days after the assaults shows

that police should have collected items from Beth's residence to test for DNA. Suggesting that law enforcement performed a poor investigation, however, would have undercut trial counsel's strategy of emphasizing that the State had not found any physical evidence indicating that Burns sexually assaulted Beth. As noted above, counsel's use of that strategy was reasonable, and, as such, it did not constitute deficient performance.

## II. SANE report

¶35 As explained above, the trial court reviewed Beth's unredacted SANE report in camera and determined the redacted information in the report about Beth's history of sexual assault should not be disclosed to the defense. On appeal, Burns contends the court erred by refusing to disclose that information because evidence that six-year-old Beth had been the victim of a prior sexual assault would have been "highly exculpatory," as it would have provided an explanation for her knowledge of sexual conduct. Burns contends that without that evidence, the jury would have been "more inclined to believe that [Beth] was sexually assaulted by Burns because they would have no alternative explanation for how or why [Beth] had any knowledge of sex acts."

¶36 In response, the State argues Burns waived his argument that the trial court erred by refusing to disclose the unredacted SANE report by stipulating that the court would "be provided with an unredacted version of the [report] for in camera inspection" and would make a "determination regarding release of the redacted portions of [the report]." The State contends Burns has "no reason to complain about the trial court doing exactly what both parties stipulated the court was to do." The State further asserts that Burns waived any argument that the court

14

erred in its decision regarding the SANE report by failing to challenge that decision below—for instance, through a motion for reconsideration.

¶37 We reject the State's waiver argument. Burns merely stipulated that the trial court would review the SANE report and determine whether the redacted information should be disclosed to the defense. Burns never agreed to give up his right to appeal the court's decision in that regard. Moreover, Burns did not waive his right to challenge the court's decision by failing to file a motion for reconsideration. After the court reviewed the unredacted SANE report and made its decision regarding disclosure, Burns had no new information that would have prompted the court to reconsider its decision. As defense counsel noted, filing a reconsideration motion therefore would have been fruitless.

¶38 The State also argues Burns forfeited his argument that the trial court erred by refusing to disclose the unredacted SANE report because he did not raise that argument in his postconviction motion. Instead, Burns' postconviction motion claimed that his trial attorney was ineffective by failing to secure the admission of evidence that Beth had been the victim of a prior sexual assault.

¶39 We question whether Burns' failure to directly challenge the trial court's decision regarding the SANE report in his postconviction motion amounted to a forfeiture of that argument under the specific circumstances of this case. Again, at the time Burns filed his postconviction motion, there was no new basis for him to argue that the court had erred by refusing to disclose the redacted information. In any event, however, forfeiture is a rule of judicial administration, and we have discretion to decide whether to apply the forfeiture rule in a given case. *State v. Kaczmarski*, 2009 WI App 117, ¶7, 320 Wis. 2d 811, 772 N.W.2d 702. Here, even

15

if Burns forfeited his argument regarding disclosure of the unredacted SANE report, we nevertheless exercise our discretion to address that argument.

¶40    When a circuit court has conducted an in camera review of protected records to determine whether they should be released to the defense, we review the court's decision regarding the release of the records for an erroneous exercise of discretion.  *See State v. Solberg*, 211 Wis. 2d 372, 385-86, 564 N.W.2d 775 (1997). "A circuit court properly exercises its discretion when it applies the relevant law to the applicable facts and reaches a reasonable conclusion."  *Id.* at 386.  A circuit court conducting an in camera review of a victim's privileged records must determine whether the records contain any relevant information that is "material" to the defendant's defense.  *Id.*  "If the records do not contain relevant information material to the defense, the circuit court must not disclose the records or any information therefrom to the defendant."  *Id.* at 387.

¶41    When a defendant challenges a circuit court's decision not to release protected records to the defense following an in camera review, we have authority to conduct our own in camera review of the records to determine whether the circuit court erroneously exercised its discretion.  *See id.* at 381-85.  In this case, having reviewed the unredacted version of Beth's SANE report, we conclude the trial court did not err by refusing to disclose the redacted information to the defense.  The information in the SANE report regarding Beth's prior experience of sexual assault is extremely limited.  The report does not contain any information about when any prior assault occurred, where it occurred, who committed it, or what type of contact it entailed.  Given the minimal information in the unredacted report, Burns would not have been able to show that evidence of Beth's prior sexual assault was admissible under *State v. Pulizzano*, 155 Wis. 2d 633, 456 N.W.2d 325 (1990).

16

¶42    To explain, evidence that a child complainant in a sexual assault case was the victim of a previous sexual assault is generally inadmissible under Wisconsin's rape shield statute, WIS. STAT. § 972.11(2).  *See* ***Pulizzano***, 155 Wis. 2d at 642-43.  "[H]owever, in the circumstances of a particular case evidence of a complainant's prior sexual conduct may be so relevant and probative that the defendant's right to present it is constitutionally protected." ***Id.*** at 647.

¶43    Consequently, "in some cases a defendant's confrontation and compulsory process rights might require that evidence of a complainant's prior sexual conduct be admitted, notwithstanding the fact that the evidence would otherwise be excluded by the rape shield law." ***Id.*** at 648.  In a case where the defendant seeks to introduce evidence of a prior sexual assault in order to provide an alternative source for a child complainant's sexual knowledge, the defendant must make an offer of proof showing:

> (1) that the prior acts clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect.

*Id.* at 656.

¶44    Given the minimal information in the SANE report regarding Beth's prior experience of sexual assault, Burns would have been unable to show any of the five factors required to admit evidence of the prior sexual assault under ***Pulizzano***.  In particular, there is nothing in the unredacted SANE report that shows whether a prior act clearly occurred or whether it closely resembled the acts that Burns was accused of committing.  As such, nothing in the report indicates whether the prior assault was clearly relevant to establishing an alternative source for Beth's

knowledge of the sexual acts at issue in this case. Under these circumstances, Burns would have been unable to show either that the redacted information in the SANE report was necessary for his defense or that the evidence's probative value outweighed its prejudicial effect.

¶45 We therefore conclude the trial court did not erroneously exercise its discretion by refusing to disclose the redacted information in the SANE report to the defense. Alternatively, because the redacted information would not have been admissible at Burns' trial, any error by the court in failing to disclose that evidence was harmless, in that it did not affect Burns' substantial rights. *See* WIS. STAT. § 805.18. Thus, even if the court erred by refusing to disclose the redacted information to the defense, that error provides no basis to reverse Burns' convictions and grant him a new trial.[6]

**III. New trial in the interest of justice**

¶46 Finally, Burns asks us to grant him a new trial in the interest of justice under WIS. STAT. § 752.35. We have discretion to grant a new trial under that statute "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." *Id.*

¶47 Burns first argues that the real controversy was not fully tried because he was not allowed to introduce the DNA evidence from Beth's underwear at trial

---

[6] Burns also appears to argue that if the redacted information in the SANE report had been disclosed to the defense, it would have allowed his trial attorney to investigate the prior assault further and to discover additional information about that assault that would have satisfied the test for admissibility under *State v. Pulizzano*, 155 Wis. 2d 633, 456 N.W.2d 325 (1990). We reject this argument because, as noted above, the information about the prior assault in the unredacted SANE report is extremely limited. The unredacted report does not contain any information about the prior assault that would have allowed Burns' trial attorney to conduct a further investigation in order to discover admissible evidence regarding the prior assault.

and because he was unable to present evidence that Beth had been the victim of a prior sexual assault. Wisconsin courts have held that the real controversy was not fully tried "when the jury was erroneously not given the opportunity to hear important testimony that bore on an important issue of the case." *State v. Hicks*, 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996). Here, however, Burns has not shown that the jury was prevented from hearing any such "important" evidence.

¶48   As explained above, the DNA evidence from Beth's underwear would not have been helpful to Burns' defense because there was no evidence connecting the underwear to the alleged assaults. Moreover, even without the DNA evidence, Burns was able to argue that the State had failed to meet its burden of proof because there was no physical evidence indicating that Burns assaulted Beth. In addition, we cannot conclude the absence of evidence that Beth was the victim of a prior sexual assault prevented the real controversy from being fully tried because, as noted above, the information about the prior assault in the SANE report was extremely limited. Thus, even if that evidence had been admitted at trial, Burns could not have used it to make a persuasive argument that the prior sexual assault was the source of Beth's sexual knowledge.

¶49   Burns also argues—in a single sentence at the very end of his brief-in-chief—that we should grant him a new trial in the interest of justice because he was denied his right to "present a full and complete defense," which caused a miscarriage of justice. Burns' argument in this regard is undeveloped. In order to grant discretionary reversal based on a miscarriage of justice, "an appellate court must first find a substantial probability of a different result on retrial." *Vollmer v. Luety*, 156 Wis. 2d 1, 16, 456 N.W.2d 797 (1990). Burns does not acknowledge this requirement or attempt to explain why it is substantially probable that a retrial

would produce a different result. We need not address undeveloped arguments. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶50 In any event, we cannot conclude it is substantially probable that a different result would occur if Burns was tried again and was permitted to introduce both the DNA evidence from Beth's underwear and evidence that Beth had been the victim of a prior sexual assault. Once again, there is no evidence connecting the underwear found in the toy box to Beth's assaults. Thus, there would be no benefit to Burns' defense on retrial if the DNA evidence from the underwear was admitted. In addition, because the SANE report contains virtually no detail about Beth's prior sexual assault, it would not provide any basis for the jury to conclude that the prior assault, rather than any assault by Burns, was the basis for Beth's sexual knowledge. Thus, it is not substantially probable that a retrial including the DNA evidence and evidence regarding the prior sexual assault would produce a different result. We therefore reject Burns' conclusory argument that the absence of that evidence during his trial caused a miscarriage of justice.

*By the Court*.—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.