COURT OF APPEALS
DECISION
DATED AND FILED

July 23, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1410**

Cir. Ct. No. **2015CF376**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

MICHAEL H. TAYLOR,

    DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Marathon County: RICK T. CVEYKUS, Judge. *Reversed and cause remanded with directions*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Michael H. Taylor appeals an order that denied his WIS. STAT. § 974.06 (2021-22)[1] motion for postconviction relief without an evidentiary hearing.  Taylor sought plea withdrawal, alleging that his trial attorney was constitutionally ineffective by failing to advise him of a potential defense and of the existence of an expert witness's report supporting that defense.  We conclude that Taylor's postconviction motion contains sufficient factual allegations to entitle Taylor to a hearing.  We therefore reverse the circuit court's order denying Taylor's postconviction motion and remand for the court to hold an evidentiary hearing on the motion.

## BACKGROUND

¶2     In May 2015, the State filed a criminal complaint that charged Taylor with two offenses, both as a party to a crime: (1) first-degree reckless homicide by the manufacture or delivery of a controlled substance; and (2) manufacture or delivery of heroin (less than or equal to three grams), as a second and subsequent offense.  The complaint alleged that Taylor sold heroin to an individual, who then sold some of the heroin to another individual, who died after using the heroin.  According to the complaint, a sample of the victim's blood showed the presence of Delta 9 THC, Carboxy THC, morphine, and 6-Monoacetylmorphine, which "is the metabolite of heroin and indicates heroin use."  A medical examiner determined that the victim's cause of death was heroin toxicity.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶3 The parties ultimately reached a plea agreement, and in January 2016, Taylor entered a no-contest plea to the first-degree reckless homicide charge. The manufacture or delivery of heroin charge was dismissed and read in.[2] Consistent with the State's recommendation, the circuit court sentenced Taylor to twenty years' initial confinement followed by ten years' extended supervision. Taylor did not file a direct appeal from his judgment of conviction.

¶4 In April 2023, Taylor filed a postconviction motion under WIS. STAT. § 974.06, seeking to withdraw his no-contest plea. As grounds for plea withdrawal, the motion alleged that Taylor's trial attorney was constitutionally ineffective by failing to inform him that he had a potential causation defense to the first-degree reckless homicide charge and that counsel had obtained an expert witness's report that supported that defense.

¶5 More specifically, Taylor's motion alleged that in August 2015, his trial attorney investigated pursuing a causation defense to the first-degree reckless homicide charge—i.e., a defense that the victim did not die as a result of the heroin that Taylor supplied. Trial counsel retained Dr. Richard Tovar, who was an assistant clinical professor at the Medical College of Wisconsin, to review the victim's autopsy results and render an opinion regarding his cause of death. Tovar opined that the victim "died of a poly-drug overdose, a combination of heroin, marijuana, and paroxetine"—i.e., Paxil, an antidepressant. Tovar explained that all three of those drugs "exhibit central nervous system sedative hypnotic effects"

---

[2] The plea agreement also resolved two other pending cases, which are not before us in this appeal.

and "act on different receptors in the brain," therefore causing "a synergistic effect on a subject resulting in a greater than expected sedative hypnotic effect. In this case, the sedative hypnotic effect was severe respiratory depression and death." Tovar further opined:

> The combined synergistic effect of the above drugs resulted in the observed effect for [the victim]. *It is not possible to state medically that one single drug was a substantial factor in [the victim's] death*, as in my training and experience, and in the medical literature, subjects have been observed to be alive with the above blood concentration of only heroin in their system.

(Emphasis added.)

¶6    Taylor's postconviction motion further alleged that his trial attorney shared Tovar's report with the district attorney, who "was unmoved, noting his office had had 'some experience'" with Tovar and had successfully "excluded [him] as an expert in two cases." According to the postconviction motion, Taylor's trial attorney then abandoned the causation defense, and "she did not share with Taylor her investigation, … Tovar's report, her communications about it with the [district attorney], or her decision to stop pursuing the defense."

¶7    In an affidavit attached to his postconviction motion, Taylor averred that in January 2016, he "reluctantly decided to enter a [no-contest] plea to the reckless homicide charge" because he believed that he had "absolutely no defense" to that charge, because the State's plea offer had "slightly improved," and because he hoped that his attorney might be able to convince the circuit court to impose a sentence that was less than the State's recommendation. Taylor asserted, "Since I had no defense, there was no point in going to trial."

¶8      According to the postconviction motion and Taylor's affidavit, Taylor first received a copy of the discovery in this case in late February or early March 2016—after he had entered his plea to the reckless homicide charge.  It was at that point that Taylor first saw the victim's toxicology report.  After noticing a reference to cocaine in the toxicology report and discussing the report with other inmates, it occurred to Taylor that the victim "could have died from another drug other than heroin, because he had a lot of other drugs in his system."  Taylor alleged in his affidavit:

> When I had entered my plea, I only had the criminal complaint, which only referenced heroin and THC in [the victim's] system.  When I learned that [the victim] had a multitude of other drugs in his system, I decided that I wished to withdraw my plea to the homicide charge.

¶9      Taylor further alleged that he "tried to reach out to" his trial attorney to let her know that he wanted to withdraw his plea, but he experienced "great difficulty getting ahold of her."  According to Taylor, when he finally spoke with his trial attorney by phone and stated that he wanted to withdraw his plea because the victim "had a lot more than heroin in his system when he died," his trial attorney "did not respond favorably to [his] thoughts," which led him to believe "that this was not a defense."  Counsel "immediately redirected the conversation to a different topic," and it was "clear" to Taylor "that she did not support [his] decision to withdraw [his] plea, because [he] had no defense."  Taylor alleged:  "I therefore completely abandoned my decision to withdraw my plea because I was led to believe that the toxicology issue simply offered no defense whatsoever.  I did not bring it up again, and neither did anyone else."

¶10      Taylor further alleged that after his sentencing, he "learned that based on the toxicology report, [he] actually did have a potential causation defense

to the homicide." In particular, Taylor's postconviction motion cited ***Burrage v. United States***, 571 U.S. 204 (2014), as legal authority in support of a causation defense. Taylor also alleged that "[m]uch more recently," he learned that his trial attorney "actually had consulted with an expert witness who provided a favorable expert opinion that would have greatly bolstered a causation defense." According to Taylor, his trial attorney never informed him "of an expert witness opinion that heroin could not be said to be the primary cause of [the victim's] death" and never discussed with him any defense to the homicide charge, including a causation defense.

¶11    Taylor also alleged that if he had been made aware of Tovar's opinion or of a possible causation defense before he entered his plea, he would not have entered a plea and "would instead have chosen to go to trial." In addition, Taylor alleged that if he had been informed of the possible causation defense and Tovar's opinion after entering his plea but before sentencing, he would not have "abandoned" his decision to withdraw his plea and would have pursued a presentencing motion for plea withdrawal.

¶12    The circuit court denied Taylor's postconviction motion without an evidentiary hearing. The court stated, "[A]s I understand the defense'[s] challenge, it's a challenge [that] the defense attorney did not raise [a] ***Burrage*** defense." The court then reasoned that the law was unsettled as to ***Burrage***'s applicability because ***Burrage*** was a federal case interpreting a federal statute, and it was up to the Wisconsin Supreme Court to interpret the meaning of causation under the state statute relevant to Taylor's case. The court therefore concluded that Taylor's trial attorney was "not ineffective for failing to challenge an unsettled portion of law."

¶13    The circuit court also stated that Taylor "was aware of the issue before sentencing, raised the issue with the [c]ourt, and then chose to abandon the issue, and proceeded with sentencing." The court reasoned that Taylor could not use his "conscious choice to abandon an argument" as a basis to withdraw his plea.

¶14    Finally, the circuit court concluded that the allegations in Taylor's postconviction motion were insufficient to entitle him to an evidentiary hearing. Taylor now appeals, arguing that the court erred by denying his motion without a hearing.

## DISCUSSION

¶15    A defendant seeking to withdraw his or her plea after sentencing "must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.'" *State v. Brown*, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906 (citation omitted). A defendant can establish manifest injustice by showing that his or her trial attorney was constitutionally ineffective. *See State v. Taylor*, 2013 WI 34, ¶49, 347 Wis. 2d 30, 829 N.W.2d 482.

¶16    To demonstrate ineffective assistance, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* at 687-88. To establish prejudice in the plea withdrawal context, a defendant must show that, but for counsel's deficient performance, the defendant would not have entered a plea and would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

¶17    In this case, the circuit court denied Taylor's postconviction motion for plea withdrawal without a hearing.  If a postconviction motion "on its face alleges sufficient material facts that, if true, would entitle the defendant to relief," then "the circuit court must hold an evidentiary hearing." *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.  The sufficiency of the facts alleged in the motion presents a question of law that we review independently.  *Id.* "However, if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *Id.*

¶18    Here, we conclude, as a matter of law, that the facts alleged in Taylor's postconviction motion are sufficient to entitle him to an evidentiary hearing.  The circuit court concluded that Taylor's allegations were insufficient because the law is unsettled regarding the applicability of the causation defense recognized in *Burrage* under Wisconsin law.  Accordingly, the court concluded that Taylor's trial attorney was not ineffective by failing to raise a causation defense.  It is well established that "[w]hen the law is unsettled, the failure to raise an issue is objectively reasonable and therefore not deficient performance." *State v. Jackson*, 2011 WI App 63, ¶10, 333 Wis. 2d 665, 799 N.W.2d 461.  Taylor's motion, however, did not allege that his trial attorney was ineffective by failing to "raise" a causation defense.  It alleged that trial counsel was ineffective by failing to advise Taylor that he had a potential defense to the reckless homicide charge and that counsel had obtained an expert opinion in support of that defense.  As Taylor notes on appeal, "[t]he problem … is not that [trial counsel] did not *pursue* a causation defense, but that she did not *inform* Taylor about that possibility based on an expert opinion she had obtained."

8

¶19 We agree that the allegations in Taylor's postconviction motion, if true, would be sufficient to establish that Taylor's trial attorney performed deficiently in this respect. Taylor's motion alleged that: (1) trial counsel hired an expert to render an opinion regarding the victim's cause of death; (2) the expert opined that it was "not possible to state medically that one single drug was a substantial factor in [the victim's] death"; (3) trial counsel never shared the expert's opinion or report with Taylor; (4) trial counsel never informed Taylor about the possibility of asserting a causation defense; and (5) Taylor entered a no-contest plea because he believed that he had no defense to the reckless homicide charge.

¶20 These facts, if true, would establish that Taylor entered his no-contest plea without the knowledge that he had a potential defense to the reckless homicide charge. In other words, Taylor entered his plea without sufficient information to allow him to make an informed choice as to whether to go to trial. We agree with Taylor that, absent some strategic reason for not informing Taylor of the potential causation defense and the expert report supporting that defense, Taylor's trial attorney's alleged conduct fell below an objective standard of reasonableness.

¶21 Moreover, Taylor's postconviction motion also alleged that: (1) before sentencing, Taylor received the victim's toxicology report for the first time and learned that the victim had additional drugs in his system, beyond those referenced in the criminal complaint; (2) Taylor informed his trial attorney that he wanted to withdraw his plea because the victim "had a lot more than heroin in his system when he died"; (3) counsel did not respond favorably to Taylor's suggestion regarding plea withdrawal, leading Taylor to believe "that this was not a defense"; and (4) Taylor abandoned his attempt to withdraw his plea because

counsel's response "led [him] to believe that the toxicology issue simply offered no defense whatsoever."

¶22   Thus, according to Taylor's postconviction motion, he informed his trial attorney before sentencing that he wanted to withdraw his plea based on a causation defense, but counsel brushed aside Taylor's desire to do so without informing him that she had previously investigated the same defense and had obtained an expert opinion that supported it. Again, absent a valid strategic reason for trial counsel's conduct, these allegations, if true, would be sufficient to show that trial counsel's performance fell below an objective standard of reasonableness.

¶23   In arguing to the contrary, the State suggests that a causation defense would not have been viable because *Burrage*—the United States Supreme Court case that Taylor cited in his postconviction motion—applied a different legal standard of causation from the standard applicable in Wisconsin. The *Burrage* Court interpreted a federal statute that imposed a mandatory minimum sentence for certain drug crimes when "death or serious bodily injury results from the use of such substance." *Burrage*, 571 U.S. at 206 (citation omitted). The Supreme Court held that this mandatory minimum sentence provision did not apply unless the victim's use of a drug distributed by the defendant was "a *but-for cause* of the [victim's] death or injury." *Id.* at 218-19 (emphasis added).

¶24   In contrast, to obtain a conviction for first-degree reckless homicide by delivery of a controlled substance under Wisconsin law, the State must prove that the victim died "as a result of" using a controlled substance delivered by the defendant. *See* WIS. STAT. § 940.02(2)(a); WIS JI—CRIMINAL 1021 (2024). Under Wisconsin law, "[t]his requires that the use of the controlled substance was

*a substantial factor* in causing the death." WIS JI—CRIMINAL 1021 (2024) (emphasis added). Given that Wisconsin law requires only that the delivery of the drug was a substantial factor in causing the victim's death, rather than a but-for cause of the death, the State contends that Taylor did not have a viable causation defense based on ***Burrage***.

¶25    We agree with Taylor that, regardless of ***Burrage***, Taylor had a potential causation defense to the reckless homicide charge under Wisconsin law. According to Taylor's postconviction motion, the toxicology report showed that multiple drugs were present in the victim's system at the time of his death. Furthermore, Tovar opined that the victim's death was caused by the combined effect of three different drugs and that it was "not possible to state medically that one single drug was *a substantial factor* in [the victim's] death." (Emphasis added.) Thus, Tovar's opinion was tailored to Wisconsin's "substantial factor" causation standard and supported a defense under that standard, even absent the Supreme Court's decision in ***Burrage***.

¶26    For these reasons, we conclude that the allegations in Taylor's postconviction motion, if true, are sufficient to establish that his trial attorney performed deficiently, absent any valid strategic reason for counsel's conduct. In addition, the allegations in Taylor's motion, if true, are sufficient to establish that trial counsel's alleged conduct prejudiced Taylor.

¶27    As noted above, in the plea withdrawal context, a defendant establishes prejudice by showing that, but for counsel's deficient performance, the defendant would not have entered a plea and would have insisted on going to trial. *See **Hill***, 474 U.S. at 59. In the affidavit attached to his postconviction motion, Taylor alleged that he "reluctantly decided to enter a [no-contest] plea to the

11

reckless homicide charge" because he believed that he had "absolutely no defense" to that charge. According to Taylor, he believed that because he had no defense, "there was no point in going to trial." Taylor also alleged that if he had been made aware of a possible causation defense or Tovar's opinion before he entered his plea, he would not have entered a plea and "would instead have chosen to go to trial." These allegations, if true, are sufficient to establish prejudice in the plea withdrawal context.

¶28 Moreover, Taylor's postconviction motion also alleged that Taylor told his trial attorney before sentencing that he wanted to withdraw his plea, but counsel's response led him to believe that he did not have a viable causation defense. According to the postconviction motion, based on counsel's response, Taylor decided not to pursue a presentencing motion for plea withdrawal. Taylor further alleged that if trial counsel had informed him of the possible causation defense and Tovar's favorable opinion before sentencing, Taylor would not have "abandoned" his decision to withdraw his plea. The standard for withdrawing a plea before sentencing is easier to meet than the standard for withdrawing a plea after sentencing. *See* ***State v. Daley***, 2006 WI App 81, ¶¶14, 19, 292 Wis. 2d 517, 716 N.W.2d 146 (explaining that the "fair and just reason" standard that applies to a presentencing motion for plea withdrawal is "more lenient" than the "manifest injustice" standard that applies after sentencing). Under these circumstances, we again conclude that the allegations in Taylor's postconviction motion, if true, are sufficient to establish prejudice.[3]

---

[3] In its decision denying Taylor's postconviction motion, the circuit court stated that Taylor "was aware of the [causation] issue before sentencing, raised the issue with the [c]ourt, and then chose to abandon the issue, and proceeded with sentencing." This reasoning is flawed for two reasons.

(continued)

¶29 For the foregoing reasons, we conclude that the allegations in Taylor's postconviction motion are sufficient to entitle him to an evidentiary hearing on his claim for plea withdrawal. We therefore reverse the circuit court's order denying Taylor's postconviction motion and remand for the court to hold an evidentiary hearing on the motion.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

First, there is nothing in Taylor's postconviction motion—or in the appellate record—to suggest that Taylor raised a causation defense or the issue of plea withdrawal *with the court* prior to sentencing.

Second, while Taylor's postconviction motion alleged that he was aware of the causation issue, generally, before sentencing, he specifically alleged that he raised the issue with his trial attorney prior to sentencing, and her response led him to believe that he did not have a viable defense. Notably, when Taylor told his trial attorney before sentencing that he wanted to withdraw his plea based on a potential causation defense, she did not inform Taylor that she had already investigated that defense and had obtained an expert opinion in support of it. Accepting these allegations as true—as a court must do when determining whether a defendant is entitled to an evidentiary hearing on a postconviction motion, *see State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433—it was trial counsel's allegedly deficient performance that caused Taylor to abandon his presentencing claim for plea withdrawal. At this stage of the proceedings, Taylor cannot be faulted for failing to seek plea withdrawal prior to sentencing despite knowing of a possible defense when he claims that his failure to do so was based on trial counsel's own conduct—which is the very conduct that Taylor now asserts was constitutionally ineffective.

13