COURT OF APPEALS
DECISION
DATED AND FILED

October 3, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2024AP730**
**2024AP731**
**2024AP732**
**2024AP733**

Cir. Ct. Nos. 2022TP5
2022TP6
2022TP7
2022TP8

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

---

NO. 2024AP730
IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.C.M.S.,
A PERSON UNDER THE AGE OF 18:

WAUSHARA COUNTY DEPARTMENT OF HUMAN SERVICES,

   PETITIONER-RESPONDENT,

  V.

A. M. S.,

   RESPONDENT-APPELLANT.

---

NO. 2024AP731
IN RE THE TERMINATION OF PARENTAL RIGHTS TO Z.S.,
A PERSON UNDER THE AGE OF 18:

WAUSHARA COUNTY DEPARTMENT OF HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

A. M. S.,

    RESPONDENT-APPELLANT.

NO. 2024AP732
IN RE THE TERMINATION OF PARENTAL RIGHTS TO D.M.S.,
A PERSON UNDER THE AGE OF 18:

WAUSHARA COUNTY DEPARTMENT OF HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

A. M. S.,

    RESPONDENT-APPELLANT.

NO. 2024AP733
IN RE THE TERMINATION OF PARENTAL RIGHTS TO I.R.V.E.,
A PERSON UNDER THE AGE OF 18:

WAUSHARA COUNTY DEPARTMENT OF HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

A. M. S.,
    RESPONDENT-APPELLANT.

2

APPEALS from orders of the circuit court for Waushara County: GUY D. DUTCHER, Judge. *Affirmed*.

¶1 BLANCHARD, J.[1] This is a consolidated appeal of circuit court orders that terminated A.M.S.'s parental rights to four of her children, granting petitions brought by the Waushara County Department of Human Services. A.M.S. challenges rulings made during the grounds phase, in which a jury returned verdicts in favor of the Department. A.M.S. specifically contends that the court erred in making evidentiary rulings that prevented her from eliciting testimony regarding: a grievance that A.M.S. filed with the Department against some Department personnel; and A.M.S.'s past personal experiences, including the fact that she herself had been deemed a child in need of protective services. A.M.S. further argues that she is entitled to a new trial on the grounds phase because her trial counsel rendered ineffective assistance during that phase. I reject each of these arguments and accordingly I affirm the orders of the circuit court.

## BACKGROUND

¶2 The termination of parental rights proceedings at issue in this appeal are based on earlier "CHIPS" cases for the children referenced in the caption of this appeal.[2] In the CHIPS cases, the circuit court issued dispositional orders in

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] "'CHIPS' is a commonly used acronym for 'child in need of protection or services." *Eau Claire Cnty. DHS v. S.E.*, 2020 WI App 39, ¶1 n.3, 392 Wis. 2d 726, 946 N.W.2d 155; WIS. STAT. § 48.13. The CHIPS cases related to the termination of parental rights proceedings at issue in this appeal were also held in the Waushara County Circuit Court.

November 2020 removing the children from the home of A.M.S. The dispositional order regarding the oldest child only was revised in February 2021. The dispositional orders for all four children were revised in February 2022. Each of the initial and revised dispositional orders contained conditions that needed to be met before the children could be returned to A.M.S.'s home. These orders also directed the Department to "make reasonable efforts to provide services" to A.M.S. "that assist [her] in meeting the conditions" to return the children, either by directly providing services to her or by referring her to one or more service providers not employed by the Department.

¶3    In December 2022, the Department filed petitions to terminate A.M.S.'s rights to the children.[3]  For each petition, the Department alleged the "continuing CHIPS" grounds as the sole basis for termination. *See **Eau Claire Cnty. DHS v. S.E.***, 2020 WI App 39, ¶1 n.3, 392 Wis. 2d 726, 946 N.W.2d 155; WIS. STAT. § 48.415(2).  This was based in part on the Department's factual allegations that:  each child had remained placed outside of A.M.S.'s home for a cumulative total of more than six months following the issuance of the CHIPS orders in November 2020; the Department "made reasonable efforts to provide" A.M.S. services ordered by the CHIPS court; and A.M.S. failed to meet several of

---

[3] Termination of parental rights proceedings involve two phases, the "grounds phase" and the "disposition phase." *See **Kenosha Cnty. DHS v. Jodie W.***, 2006 WI 93, ¶10 n.10, 293 Wis. 2d 530, 716 N.W.2d 845.  At the grounds phase, the trier of fact determines whether grounds exist to terminate a parent's rights to his or her child. *See **id.***  During this phase, "'the parent's rights are paramount'" and the government bears the burden of proof. *See **id.***  If the grounds for termination are found to be proven, the circuit court finds the parent "unfit" and proceeds to the disposition phase. *See **id.***; WIS. STAT. § 48.424(4).  At the disposition phase, the court "determines whether it is in the child's best interest to terminate parental rights." *See **Jodie W.***, 293 Wis. 2d 530, ¶10 n.10; WIS. STAT. § 48.427.  As noted, A.M.S.'s arguments on appeal implicate only the grounds phase.

the conditions set by the CHIPS orders for return of the children to A.M.S.'s home. *See* § 48.415(2)(a).[4]

¶4    In October 2023, a jury trial was held regarding the grounds alleged in the termination of parental rights petitions. *See* WIS. STAT. §§ 48.415 [intro], 48.424(1)(a). The Department called A.M.S. as a witness. The Department also called six Department employees, including multiple social workers who worked with A.M.S. during the pertinent period of out-of-home placement for her children, along with supervisors of those social workers.

¶5    During A.M.S.'s cross-examination of one of the Department supervisors, A.M.S. attempted to elicit testimony regarding the effects that out-of-

---

[4] To prove this ground for termination of parental rights, the Department bore the burden to prove the following, given that there is no dispute that the children were placed outside of A.M.S.'s home for more than 15 months out of the 22 months immediately preceding the filing of petitions to terminate parental rights:

> (1) [That] "the child has been adjudged to be a child or an unborn child in need of protection or services and placed, or continued in a placement, outside his or her home" for a cumulative total period of six months or longer pursuant to one or more court orders under one of the enumerated statutory sections;

> (2) [That] "the agency responsible for the care of the child and the family [*i.e.*, the Department] …. has made a reasonable effort to provide the services ordered by the court"; [and]

> (3) [That] "the parent has failed to meet the conditions established for the safe return of the child to the home" ….

*See* ***La Crosse Cnty. DHS v. Tara P.***, 2002 WI App 84, ¶8, 252 Wis. 2d 179, 643 N.W.2d 194 (quoting WIS. STAT. § 48.415(2)(a)2.b. and 3.); *see also* WIS JI—CHILDREN 324. As discussed in more detail below, at trial A.M.S. disputed only the second of these elements, "reasonable effort" by the Department.

home placement can have on CHIPS children generally and regarding A.M.S.'s background as a former CHIPS child. The circuit court sustained objections by the Department and guardian ad litem based on lack of relevance and foundation.

¶6  Later during the trial, counsel for A.M.S. recalled A.M.S. to the stand. Trial counsel sought to elicit testimony from her about her past interactions with the child protective services system. The Department objected based on a lack of relevance, and the circuit court sustained this objection. The court further ruled that A.M.S. could not testify regarding her "interactions with the [D]epartment" or other "authorities" that occurred before the initiation of the cases involving her children.

¶7  A.M.S. further sought to call a Department employee who served as a "grievance officer" for the Department. This person investigates grievances of the type that A.M.S. filed in these cases. The Department and guardian ad litem for the children objected. Trial counsel for A.M.S. provided a proffer to the circuit court about the testimony she sought to elicit and conducted a voir dire of the prospective witness. The court sustained the objections and excluded the grievance officer's proffered testimony. A.M.S. did not call any additional witnesses.

¶8  The jury returned verdicts that the Department met its burden regarding each of the elements of the continuing CHIPS ground for each of the children. As a result, the circuit court found A.M.S. unfit as a parent for each child.

¶9  The circuit court held a hearing to determine whether to terminate A.M.S.'s parental rights regarding the children. The court found that it was in the

6

best interests of the children to terminate A.M.S.'s parental rights, and entered orders to that effect.

¶10    In June 2024, A.M.S. filed a post-disposition motion for a new grounds phase trial. The basis of the motion was A.M.S.'s claim that she received ineffective assistance of trial counsel. Specifically, she argued that her trial counsel performed deficiently in making an inadequate offer of proof in support of the admission of the grievance officer's proffered testimony. A.M.S. argued that this prejudiced her because it led to the circuit court excluding the officer's proffered testimony, which she contended deprived her of evidence that was significant to her defense and that would counter part of the Department's case.

¶11    The circuit court held a postdisposition hearing at which A.M.S.'s trial counsel testified as the sole witness. The court rejected A.M.S.'s ineffective assistance arguments and denied the motion for a new trial. A.M.S. appeals.

## DISCUSSION

¶12    A.M.S. challenges the circuit court's evidentiary rulings during the grounds phase trial to exclude the grievance officer's proffered testimony and to limit her ability to elicit testimony regarding her experiences as a child in need of protection and services. A.M.S. further argues that the court erred in rejecting her post-disposition contention that her trial counsel was ineffective in arguing for the admission of the grievance officer's proffered testimony.

## I.  Exclusion of Evidence

¶13    Circuit court decisions to admit or exclude evidence are reviewed under an erroneous exercise of discretion standard. *See La Crosse Cnty. DHS v.*

7

***Tara P.***, 2002 WI App 84, ¶6, 252 Wis. 2d 179, 643 N.W.2d 194 (citing ***Morden v. Continental AG***, 2000 WI 51, ¶81, 235 Wis. 2d 325, 611 N.W.2d 659). Appellate courts "will not upset a circuit court's decision to admit or exclude evidence if the decision has 'a reasonable basis' and was made 'in accordance with accepted legal standards and in accordance with the facts of record.'" *See **id.*** (quoted source omitted).

¶14      Each of the evidentiary challenges brought by A.M.S. relate to the relevancy of particular pieces of testimony to the issues raised in the grounds phase trial. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* WIS. STAT. § 904.01; ***Tara P.***, 252 Wis. 2d 179, ¶13. Here, to repeat, the sole ground pursued by the Department was "continuing CHIPS," and A.M.S. disputed at trial only one element that is needed to prove this ground. Thus, the facts of consequence in these cases all related to the following question: Did the Department make a "reasonable effort to provide the services ordered by the court" in the CHIPS orders? The legislature has defined "reasonable effort" in this context to mean:

> an earnest and conscientious effort to take good faith steps to provide the services ordered by the court which takes into consideration the characteristics of the parent or child …, the level of cooperation of the parent … and other relevant circumstances of the case.

WIS. STAT. § 48.415(2)(a)2.a.; *see also* WIS JI—CHILDREN 324.

¶15      Thus, at the trial here, evidence that was relevant to the only disputed topic, whether the Department made a "reasonable effort," was "generally admissible." *See* WIS. STAT. § 904.02. At the same time, a circuit

8

court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *See* WIS. STAT. § 904.03.

### A. Exclusion of Grievance Officer's Proffered Testimony

¶16 The circuit court excluded proffered testimony by the Department grievance officer on the ground that A.M.S. failed to provide the court with sufficient foundational facts to show how the proffered testimony would be relevant. A.M.S. argues that this was an erroneous exercise of discretion because, under the proffer that she made, the testimony would have helped her to show that the Department failed to make a "reasonable effort" to provide the ordered services to A.M.S.

¶17 At the trial for the grounds phase, each of the Department employee-witnesses testified that A.M.S. was a "challenging" or "difficult" parent to work with, including when they tried to offer her services. For example, one social worker testified that it could be difficult to communicate with A.M.S. because her contact information frequently changed, and that A.M.S. had trouble tracking or recalling the reason for a particular meeting or call. Another social worker testified that A.M.S. would sometimes miss meetings or, when she did attend, she would yell at the social worker.

¶18 A.M.S. testified in part that, when she was "having communication issues" with Department personnel, she would file grievances through the Department's grievance procedure.

¶19    Later during the trial, A.M.S. sought to call the Department grievance officer.  The Department and guardian ad litem objected to this testimony.  Counsel for A.M.S. proffered that the officer should be allowed to testify to "his role … in reviewing [and] responding to grievances," and the recommendation that he made to the Department to transfer the cases involving A.M.S. to the department of human services for another county, based on one of A.M.S.'s grievances.  Counsel explained that, with this limited target for testimony, counsel would not elicit testimony about A.M.S.'s "specific allegations" made as part of any of her grievances, including the one that resulted in the recommendation to transfer.  Regarding concerns over a sufficient "foundation" for this testimony, counsel contended that reviewing and making recommendations based on grievances was part of the officer's "role and responsibilities" in "the normal course" of his work for the Department.

¶20    The circuit court directed A.M.S. to conduct a voir dire of the grievance officer.  The grievance officer testified to the following.  Under Department policy, when a parent submits a grievance, the officer has 30 days to investigate it and write a reply that contains recommendations. Pertinent here, the officer reviewed a written grievance submitted by A.M.S. dated May 20, 2022 ("the May 2022 grievance"), investigated it, and made the written

recommendation for the Department "to consider transferring" the cases out of the county.[5]

¶21 The circuit court sustained the objections of the Department and the guardian ad litem. Outside the presence of the jury, the court noted in part that it had not been presented with the content of the May 2022 grievance, nor about what "investigative processes" the officer actually undertook in response to any of A.M.S.'s grievances, including the May 2022 grievance. The court further said that "getting into" the topic of the May 2022 grievance at trial would "open the door to examination of the entire grievance," not necessarily only those aspects that A.M.S. wanted to highlight. The court continued:

> I'm unable to evaluate the admissibility of the [May 2022] grievance itself, which I think would be a precursor to evaluating evidence concerning this witness's conclusion about what responsibly ought be done [in response] to the grievance. I don't even, at this point, know whether the grievance pertains to the circumstances that are alleged to be present in this case, as there are circumstances … where I could easily see that a grievance may be filed that has to do with something that is attenuated or totally unrelated to whatever it is in this case…. And, absent [a] foundation being established, absent the Court having the ability to evaluate what … the grievance was, what the circumstances were, what the investigative protocols were that were followed or not followed, whatever conclusions this witness may have made in response to those, I am not in a position where I can do anything other than to sustain the objection ….

---

[5] While the record may be ambiguous on the point, I assume in A.M.S.'s favor that the circuit court would have most reasonably understood the grievance officer's voir dire testimony that he recommended that the Department "consider transferring" the cases to mean the following: the officer in fact recommended that a transfer would be the best course of action for the Department, and not that the officer merely recommended that the Department take an initial step of evaluating a possible transfer, with the officer not favoring or disfavoring transfer.

11

¶22    With this background in mind, I conclude that the circuit court reasonably applied pertinent legal principles to the limited facts before it in deciding to exclude the proffered testimony. As the court emphasized, it was not presented with evidence regarding the content of the May 2022 grievance, or materials (if any) related to the officer's investigation of the May 2022 grievance and the officer's report. In the absence of such materials, it was reasonable for the court to determine that A.M.S. failed to show that the officer's ultimate recommendation regarding the May 2022 grievance was relevant to the issue of whether the Department made a reasonable effort to provide the ordered services to A.M.S. Put differently, it is not clear from the proffered testimony the degree to which the May 2022 grievance involved issues specifically relevant to the only disputed issue at trial, as opposed to unrelated topics.

¶23    Further, the circuit court's comments regarding a lack of a "foundation" reflect reasonable concerns based on the lack of evidence regarding how the grievance officer reached his recommendation to transfer the cases. To cite one notable example of the potential significance of the lack of evidence regarding the May 2022 grievance or how it was investigated, the court could not evaluate whether the officer's proffered testimony constituted admissible lay or expert opinion testimony. More generally, it was not clear from what was presented to the court how the grievance officer's proffered testimony would have assisted the jury in evaluating anything about the Department's effort to provide ordered services. *See* WIS. STAT. §§ 907.01-.02.

¶24    On appeal, A.M.S. merely provides conclusory assertions that the grievance officer's proffered testimony had some tendency to make it more or less probable that the Department did not make an "earnest and conscientious effort to

12

take good faith steps" to provide services as required under WIS. STAT. § 48.415(2)(a). She also asserts that the grievance officer's recommendation was "the most important part[] of his testimony, and the seminal fact[] that [A.M.S.] sought to present to the jury."[6] These assertions fail because A.M.S. fails to squarely address the circuit court's reasoning, which is readily supported by the record.

¶25     Moreover, even if the jury could fairly consider the recommendation standing alone to have probative value, the court's basis for excluding the officer's proffered testimony was reasonable under WIS. STAT. § 904.03. The court could reasonably deem the probative value of the recommendation, in the absence of facts supporting the recommendation, as low and even potentially detrimental to A.M.S.'s defense. In that case, the probative value was unlikely to "substantially outweigh[] the danger of unfair prejudice" or "confusion of the issues." *See* § 904.03.

### B. Exclusion of Testimony Regarding A.M.S.'s Condition

¶26     A.M.S. argues that the circuit court clearly erred in barring her from eliciting testimony relating to the fact that A.M.S. was herself once a child in need of protection or services. Her argument is that the jury should have had an opportunity to evaluate whether this status or background could have played a role in the alleged failure of the Department to meet its obligations to make a

---

[6] A.M.S. also contends that the grievance officer's "conclusion" was an important piece of his testimony and a "seminal fact[]," but A.M.S. does not explain what "conclusion" she is referring to. To the extent that she means to suggest that the circuit court was presented at trial with factual findings or conclusions underlying the officer's recommendation to transfer the cases, this is unsupported by the reference that A.M.S. makes to the record.

13

reasonable effort in offering ordered services to her. *See* WIS. STAT. § 48.415(2)(a)2.a. ("tak[ing] into consideration the characteristics of the parent" is part of the definition of "reasonable effort" required under continuing CHIPS ground). A.M.S. specifically contests the court's rulings excluding testimony on this topic that she sought to elicit in cross-examination of a Department supervisor and in A.M.S.'s own testimony.

¶27 On cross-examination, one of the Department supervisors testified that the supervisor had received continuing education "on trauma-informed" services and "children in [child protective services] situations in out-of-home placements." A.M.S.'s trial counsel then asked about the effects on children that being placed out of the home can have, to which the supervisor responded:

> So a child being placed outside of the home can … be a traumatic experience for the child, unfortunately, if they are not placed with relatives and they are placed with someone who is unknown. They have to … live with someone who, essentially, they are not familiar with, and [in] their world could be identified as a stranger for them. So, absolutely, that can be confusing, and it can be traumatic for a child sometimes, yes.

Counsel asked what that circumstance can lead to, and began to ask whether this can "make it hard for a child to trust—?" At this point, the guardian ad litem objected to this line of questioning as "outside the scope of the proceedings," and the Department joined the objection.

¶28 Counsel for A.M.S. took the position that the proposed line of questioning was intended to elicit testimony about the Department supervisor's "expertise in the area … and how that guided services that were provided" to A.M.S. The circuit court sustained the objections on the ground that the proposed

14

line would be unrelated to the "limited" topic of the hearing, which was "the existence of the [CHIPS] orders, compliance with the orders, and efforts reasonably made to facilitate or assist compliance with the orders."

¶29    A.M.S.'s counsel resumed cross examination of the Department supervisor as follows:

> Q. So with your experience with … these particular cases and with [A.M.S.], per the documentation and the orders that had been provided in this case, you were aware that [A.M.S.] had, in fact, also been a child in need of protection or services; correct?
>
> A. I was aware.
>
> Q. So with your training in trauma-informed services, how did that guide your interactions with [A.M.S.]?
>
> A. So in my interactions with [A.M.S.], I tried to have a calm demeanor in speaking with her, really listen, and allow her to speak, and offer … suggestions, or if she needed more information, to provide her with that information, to really have conversations about the available resources to her and provide her with that information.
>
> Q. So isn't it true, though, that … her past experiences may have made it harder for her to engage with the [D]epartment?

The supervisor answered, "yes," and the guardian ad litem and County again objected. A.M.S.'s counsel argued that this questioning was relevant to "whether or not the [D]epartment made reasonable efforts, in light of this particular situation."

¶30    The circuit court sustained the objections. The court explained its reasoning this way:

15

The line of questioning is clearly intended to elicit information that is reflective upon issues that are not before us, are intended to call into question concerns that are not appropriately being addressed at this stage of the process.…. It is not relevant and also would appear to the Court that, even if it were [relevant,] … to lack the requisite level of foundation; but I sustain the objection principally upon relevance, and we are moving into an area that is broaching upon nullification.

Counsel's cross-examination moved on to other topics, and counsel did not attempt to cross-examine other Department witnesses on the topic.

¶31 When A.M.S. was recalled to the stand, her counsel elicited testimony regarding traumatic events that A.M.S. had undergone in 2020 alone: in April of that year, her fiancé, the father of three of the children, was murdered; in June, one of the children was born; and in July, three of the children were placed outside the home under the pertinent CHIPS orders. When asked about whether she was suffering "mental health issues" as a result of these events, A.M.S. testified that she was experiencing "[a] lot" of issues, namely "postpartum depression, grief," and issues relating to "childhood traumas." Counsel then asked whether A.M.S.'s work with the Department pursuant to the CHIPS orders was her "first encounter" with the child protective services system. The Department objected based on relevance, and the circuit court sustained the objection.

¶32 A.M.S.'s counsel requested a sidebar at which she took the position that A.M.S.'s "history of … trauma" was relevant to the testimony by Department employees that A.M.S. was difficult to work with. The Department and guardian ad litem argued that the timeframe relevant to the grounds phase of the proceedings consisted only of the time from entry of CHIPS orders until the filing of petitions to terminate parental rights. Thus, they argued, A.M.S.'s experiences

from well before this period and the death of her fiancé were "irrelevant" and would serve only to "prejudice the [j]ury."

¶33 The circuit court affirmed its ruling sustaining the objection. The court said that admission of testimony about A.M.S.'s experience as a child in need of protection or services would open wide a "Pandora's box" of otherwise inadmissible evidence about "the nature and substance of the interactions that have been conducted with [A.M.S.] on prior occasions." The court also deemed such evidence "[i]rrelevant." The court expressed a concern that such evidence would "have a substantial likelihood of being highly prejudicial" "to both parties," what the court characterized as a "double-edged sword." Specifically, the court reasoned that the Department might seek to introduce in rebuttal potentially relevant evidence regarding A.M.S.'s past experiences that "would have a substantial likelihood of being highly prejudicial to her."

¶34 Accordingly, the circuit court ruled that A.M.S. could "testify as to what her belief and [what] her conditions [ordered in the CHIPS cases] were and the circumstances that she confronted," but she was barred from testifying about "her interactions with the [D]epartment on prior occasions and interactions that she may have had with the authorities on prior occasions." The court further explained that A.M.S. could testify about "where she found herself emotionally and in other ways during the times that she was asked to comply with [the CHIPS] orders," but that she could not testify about "circumstances that predated the entry of the orders and the interactions that had led to" the filing of the orders.

¶35 With this added background in mind, I conclude that the circuit court properly exercised its discretion in making the rulings challenged by A.M.S. based

17

on the record before it. The court could reasonably conclude that neither line of questioning was relevant to the issue of whether the Department had made a reasonable effort to provide ordered services. Regarding the Department supervisor cross-examination, counsel for A.M.S. provided only a general, conclusory proffer of relevance of testimony regarding "trust issues" that former CHIPS children might often harbor. The court could only speculate regarding the possibility of "trust issues" that might arise for parents working with county human services departments when the parent was formerly a child in need of protection or services, and further, how any such trust issues might inform what the Department is obligated to take into account in making a "reasonable effort" under WIS. STAT. § 48.415(2)(a). It was reasonable for the court to require A.M.S. to more clearly preview, for purposes of this particular set of cases, how that factual link could be made before allowing her counsel to take a witness into a potential confusing and prejudicial area.

¶36    Similarly, A.M.S. did not provide the circuit court with a clear connection between her own potential testimony regarding her past experiences and traumas and a relevant fact of consequence to the only disputed issue at trial. At bottom, the court was left to speculate about the existence of a specific inferable link between the traumatic experiences that A.M.S. was able to testify about and alleged Department failures to make a reasonable effort to provide services.

¶37    Moreover, as the circuit court explained in both its rulings, even if the excluded testimony had some foreseeable probative value to the reasonable effort issue, it was reasonable for the court to determine that the danger of unfair prejudice or confusion of the issues substantially outweighed this value. Implied

18

in the court's reasoning is that the proposed testimony could in each instance have had only minimal probative value on any relevant point.  Against this low level of probative value, the court reasonably identified dangers of substantial prejudice to both parties or of confusion by the jury.

¶38    Expanding on this last point regarding the supervisor's testimony about children in need of protection or services generally, A.M.S. identifies no flaw in the circuit court's apparent concern over unfair prejudice that the court weighed against the probative value of the evidence.  There was a reasonable basis for the court to be concerned about allowing testimony regarding the trauma that is often experienced by children who are placed outside of a parent's home, because here it was undisputed that the Department had placed the children in separate homes under the CHIPS orders.  This could tend to prejudice the jury against the Department based on a nullification rationale.

¶39    Further, putting to the side an ineffective assistance of counsel argument that I address below, A.M.S. does not squarely address the circuit court's concern about the potential for A.M.S.'s proffered testimony to unfairly prejudice her.  That is, she does not challenge the reasoning of the court that eliciting such testimony would open the door to the Department to explore the topic of A.M.S.'s past, or in the alternative for the jury to unfairly issue verdicts based purely on sympathy for A.M.S.

¶40    A.M.S. makes the observation that, as provided by WIS. STAT. § 48.415(2)(a)2.a., what constitutes a "reasonable effort" by a responsible agency such as the Department will vary depending on the characteristics of the parent.  For example, reasonable effort with respect to a blind parent will be in some

19

respects different than for one who is not seeing-impaired. Using this a conceptual starting point, A.M.S. contends that whether the Department's effort was reasonable depends on whether it took into consideration A.M.S.'s condition as a former child in need of protection or services and the "trust issues" this could cause.

¶41 I assume without deciding that a parent's former status as a child in need of protection or services could be relevant to a lack-of-reasonable-effort defense in some cases. Here, however, the circuit court was not presented with a clear theory, rooted in available evidence that A.M.S. sought to elicit, of how that status should have informed the Department's approach to providing ordered services to A.M.S.[7] While it was the Department's burden to prove its cases, *see* WIS. STAT. § 48.31(1), A.M.S. bore the burden of establishing the admissibility of the testimony she sought to introduce, *see **State v. Payano***, 2009 WI 86, ¶68 n.14, 320 Wis. 2d 348, 768 N.W.2d 832.

¶42 Left unanswered by A.M.S. is what the Department should have done but did not do based on A.M.S.'s past traumas. She asserts that A.M.S.'s CHIPS-based trust issues constituted "unique characteristics" that the jury "had to fully learn about" in order to "evaluat[e] whether the [D]epartment" took A.M.S.'s

---

[7] It is true that, before the circuit court sustained objections, the supervisor briefly testified to some measures she would take in working with A.M.S. based on A.M.S. having been a child in need of protection or services. As noted, this included the supervisor testifying that the supervisor employed a "calm demeanor" with A.M.S. However, neither at trial nor on appeal does A.M.S. articulate how any of the measures briefly testified to by the supervisor connected to any relevant point that A.M.S. sought to introduce at trial. A.M.S. does not point to additional measures she would have inquired about if the court had not made the challenged evidentiary rulings, nor does she explain how any ruling of the court prevented her from asking Department employee-witnesses a wide range of questions about how they interacted with A.M.S.

20

condition into account in making the effort to provide her with services. But A.M.S. does not explain what more the jury would have learned if additional testimony had been provided by the Department supervisor or A.M.S. Put differently, the circuit court, in making the challenged evidentiary decision, lacked a basis to credit her assertion that A.M.S.'s past trauma and experiences and resulting trust issues made it more probable that the Department did not make a "reasonable effort."

¶43 A.M.S. argues that the circuit court made a mistake of law in concluding that any events testified to that occurred before the filing of the CHIPS orders were categorically inadmissible. Such a ruling, she notes, would be contrary to *Tara P.*, which states in pertinent part that "facts occurring prior to a CHIPS dispositional order are frequently relevant to the issues at a termination proceeding," including to the issue of whether "facts occurring prior to a CHIPS dispositional order are frequently relevant to the issues at a termination proceeding." *See Tara P.*, 252 Wis. 2d 179, ¶¶10, 14 n.4. It is true that the court barred A.M.S. from testifying about "circumstances that predated the entry of the [CHIPS] orders."

¶44 But A.M.S. does not persuade me that, in doing so, the circuit court based its order solely on the timing of events, or that the court's references to timing signaled a material misunderstanding about facts relevant to the court's decision. As the Department notes on appeal, this court emphasized in *Tara P.* "that just as there is no blanket prohibition on evidence of events prior to a dispositional order, our present holding does not provide blanket authority for its admission." *See id.*, ¶20. As an example, this court noted that "evidence may be excluded on relevancy grounds in light of the particular facts of a case." *Id.* For

21

the reasons noted above, it was reasonable for the court here to rule that the evidence predating the CHIPS orders that A.M.S. sought to introduce in this set of cases was inadmissible for lack of relevancy established under the facts here, or alternatively based on dangers of unfair prejudice or issue confusion.[8]

## II.  Ineffective Assistance of Counsel

¶45     Parents subject to termination of parental rights proceedings have a right to effective assistance of counsel.  *See **A.S. v. State***, 168 Wis. 2d 995, 1004, 485 N.W.2d 52 (1992); WIS. STAT. § 48.23(2).   A parent claiming ineffective assistance of counsel must show both that counsel performed deficiently and that this performance prejudiced the parent's defense.  *See **A.S.***, 168 Wis. 2d at 1005 (adopting as standards for termination of parental rights context the standards of ineffective assistance claims in the criminal context under ***Strickland v. Washington***, 466 U.S. 668 (1984)).  Deficient performance is that which falls below "objective standards of reasonableness." ***Amy W. v. David G.***, 2013 WI App 83, ¶10, 348 Wis. 2d 593, 834 N.W.2d 432 (citing ***Strickland***, 466 U.S. at 687, 690).  Establishing prejudice requires showing that counsel's performance created "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."  *See **id.*** (citing ***Strickland***, 466 U.S. at 694).

---

[8] Because I conclude that the circuit court did not err in any of the challenged trial rulings, I do not address the parties' arguments regarding whether any such error was harmless except to the extent the parties incorporate such arguments into their discussion of A.M.S.'s ineffective assistance of counsel claim addressed in the text below.

¶46    "This court will uphold the circuit court's findings of fact … unless they are clearly erroneous." *See* ***State v. Domke***, 2011 WI 95, ¶33, 337 Wis. 2d 268, 805 N.W.2d 364.    "Whether counsel's performance constitutes constitutionally ineffective assistance of counsel … presents a question of law that this court decides de novo." ***Id.***

¶47    A.M.S. argues that she received ineffective assistance of trial counsel because counsel did not present the circuit court with the grievance officer's report in support of admitting his testimony.  This was deficient, she argues, because the report would have refuted the court's grounds for excluding the officer's proffered testimony.  A.M.S. further contends that this failure by trial counsel undermines confidence in the trial outcome for the following reasons: The grievance officer's proffered testimony, as supported by the report, would have bolstered A.M.S.'s trial defense that the Department did not make a reasonable effort to provide ordered services and counteracted evidence elicited by the Department that A.M.S. was "difficult" to work with.

¶48    A.M.S.'s trial counsel testified as follows at the postdisposition hearing.  Before trial, counsel reviewed the grievance officer's reports, and made the decision to seek to introduce testimony regarding the officer's decision to recommend that the Department transfer A.M.S.'s cases, which was reflected in the officer's report on the May 2022 grievance.  Counsel did not remember if she considered providing the report to the circuit court as part of her proffer, nor did she recall if she had "a strategic or tactical reason" for not doing so.  Despite this lack of recollection, trial counsel testified that she intended to introduce some of the contents of the report at trial through the officer's testimony.

23

¶49    The grievance officer's report itself was submitted to the circuit court as an exhibit to A.M.S.'s postdisposition motion and an exhibit at the hearing on the motion.  The report reflected the following:

- A.M.S. submitted "grievance forms" to the officer in May 2022.  These forms "detail[ed]" various events that apparently formed the basis for the May 2022 grievance (some of which were testified to at trial but others were not).

- The officer met with A.M.S. to discuss her grievance in June 2022.  The officer reviewed "Child Protective Services records … dating back to July 2020," and the officer interviewed Department staff regarding the events identified by A.M.S.'s grievance.

- The officer identified "patterns" of behavior by A.M.S. through the records reviewed by the officer.  Based on some of this behavior, the officer opined that A.M.S. "had deep seeded resentments toward the [D]epartment."  Noted patterns of behavior included using "raised voice and profanity towards staff to the point where staff become anxious and scared to continue to provide you services."  The report characterized this behavior as "verbally abusive," which it defined in part to be "a range of words or behaviors used to manipulate, intimidate, and maintain power and control over someone."

- The officer made the final recommendation to, "as soon as possible," transfer A.M.S.'s case to another county pursuant to "Federal Guidelines."  This was because "trust and objectivity has been lost on both sides."

The report is undated, but the record suggests that it was circulated several months before the Department filed the petitions to terminate A.M.S.'s parental rights.

¶50    I conclude that A.M.S. fails to establish that her counsel performed deficiently.  Trial counsel's conduct in pursuing the admission of the grievance officer's testimony fell within "what a reasonably competent defense attorney could have done" under the circumstances.  *See* ***State v. Jackson***, 2011 WI App

24

63, ¶9, 333 Wis. 2d 665, 799 N.W.2d 461. As noted above, the circuit court made the determination at trial that admitting testimony about the grievance officer's recommendation to transfer A.M.S.'s cases would "open the door to examination of the entire grievance." The content of the report contained information that might have been potentially useful to A.M.S.'s defense but also other information that potentially supported the Department's positions in these cases or was otherwise prejudicial to A.M.S. For example, the officer's analysis of records and interviewing of Department staff to determine whether A.M.S. displayed a pattern of "verbal abuse" would have put the officer's recommendation to consider transferring the cases in a light that was detrimental to A.M.S.; this would have reinforced the Department's ability to show that the Department made a reasonable effort when one takes into account A.M.S.'s purported low level of cooperation. *See* WIS. STAT. § 48.415(2)(a)2.a. (making "the level of cooperation of the parent" part of the meaning of "reasonable effort"). Given these circumstances, counsel's decision to not further pursue the officer's testimony through submission of the report to the court was not outside the range of what a reasonably competent attorney would do.

¶51 On appeal, A.M.S. emphasizes the ways in which the grievance officer's recommendation and some information within the report could have supported the defense that the Department did not make a "reasonable effort" to provide A.M.S. with ordered services. She highlights potential inferences from the report and a recommendation that A.M.S.'s friction with the Department was due to a conflict with Department personnel for which both sides shared blame—a conflict that demonstrated the Department's failure to reasonably tailor its work with A.M.S. to her particular characteristics. But A.M.S. fails to show that trial

counsel was required to weigh the potential for these favorable inferences more heavily than the risk of exposing the jury to negative inferences for A.M.S. regarding her purported failure to cooperate.

¶52    A.M.S. contends that the contents of the grievance report that were potentially harmful to her at trial had already been introduced through the testimony of other Department employees.  Thus, the argument goes, counsel should not have considered the risk of negative inferences significant.  It is true that some information in the report that reflected poorly on A.M.S. was testified to by Department witnesses.  But the factual bases for the grievance officer's recommendation reflected in the report were additional, and vivid, in describing A.M.S.'s conduct in ways that could support relevant inferences in favor of the Department's positions in these cases.  After all, the grievance officer had the role of an investigator.  There would have been at least a reasonable inference that the officer properly determined that A.M.S.'s reportedly aggressive and hostile conduct was going to spoil the relationship regardless of how reasonable the Department's effort was in providing ordered services to her.  The report went beyond the testimony provided by Department employees that A.M.S. was "challenging" and "difficult," describing A.M.S.'s behavior as verbally abusive and severe enough to make Department employees anxious about having to work with her in person.[9]

---

[9] The parties dispute a related issue that I do not resolve because A.M.S. fails to develop her side with arguments supported by legal authority.  The Department argues that much of the report's contents would be inadmissible as hearsay.  In reply, A.M.S. contends that, if the grievance officer's report had been provided to the circuit court as part of the proffer, this would not have resulted in the grievance officer testifying to the jury regarding details contained in the report.  A.M.S. may further intend to contend that some of the information in the report that
(continued)

¶53 In her reply brief, A.M.S. emphasizes that trial counsel testified in the postdisposition hearing that her decision not to provide the grievance report to the circuit court during the proffer was not based on any strategic consideration that counsel could recall. But "[d]eficient performance is judged by an objective test, not a subjective one"—if counsel's conduct falls within reasonable bounds, it is not deficient, "regardless of [his or her] thought process." *See Jackson*, 333 Wis. 2d 665, ¶9.

## CONCLUSION

¶54 For all of these reasons I affirm the orders of the circuit court.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

would have undermined her defense would not have been admissible. However, neither A.M.S. nor the Department provide developed arguments on these admissibility topics. As a result, A.M.S. fails to demonstrate that the circuit court lacked a reasonable basis to warn trial counsel for A.M.S. at the time of her proffer that the grievance officer's testimony would "open the door" to the Department being allowed to explore the factual basis for the officer's recommendation to consider transfer of the cases out of the county.